UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| MYKEL HAWKE,<br><br>Plaintiff,<br><br>v.<br><br>DISCOVERY COMMUNICATIONS, LLC d/b/a THE DISCOVERY CHANNEL, DISCOVERY COMMUNICATIONS, INC., and JOSEPH TETI, Individually<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No.: 6:15-cv-03192-TMC<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..... 1

II. FACTUAL SUMMARY ..... 3

A. Mykel Hawke and Joe Teti are Brothers in Arms and Friends ..... 3

B. Hawke Becomes a Television Star and Hires Teti to Provide Personal Security for His Family ..... 3

C. Teti is Cast for *Dual Survival* ..... 4

D. Hawke's Star Falls While Teti's Rises—and Animosity Ensues ..... 5

E. Hawke Accuses Teti of "Defamation and Threats" and Asks Discovery to Intervene—But Refuses to Provide Support for His Accusations ..... 6

F. Hawke and Teti Escalate Their Personal Feud by Filing Lawsuits Against Each Other in Texas and North Carolina State Courts ..... 7

G. Hawke Drags Discovery into His Personal Feud by Filing this Lawsuit ..... 7

III. ARGUMENT ..... 8

A. Hawke's Allegations are Hopelessly Vague and Inconsistent ..... 8

B. The Communications Decency Act Immunizes Discovery from Liability Because Each of the Claims Arises from Statements Made by Teti or Third Parties That Were Not Created or Developed by Discovery ..... 11

1. Discovery is a Provider and/or User of an Interactive Computer Service Because it Administers an Official Facebook Page ..... 13

2. Hawke's FAC Treats Discovery as a "Publisher" of the Statements Because Hawke Asserts that Discovery Published the Statements ..... 13

3. Teti and Other Third Parties, Not Discovery, are the Information Content Providers Because they Made the Statements Without Material Contribution by Discovery ..... 14

4. CDA Immunity Bars All of Hawke's Claims ..... 15

C. Even if Section 230 Did Not Apply, Discovery is Not Vicariously Liable for The Statements Because they Were Made by Teti Outside the Scope of His Obligations to Discovery ..... 17

1. Hawke Fails to Allege Vicarious Liability ..... 17

2. Teti's Statements Were Not Made in the Course and Scope of His Role at Discovery ..... 18

D. Teti's Statements are Not Defamatory ..... 21

1. Teti's Statements are Opinion, Not Fact ..... 22

2. Neither Discovery Nor Teti Acted with "Actual Malice" ..... 24

**TABLE OF CONTENTS**
(continued)

**Page**

E. Hawke's Ancillary Claims Should be Dismissed for Numerous Reasons .......... 26

1. Hawke's Other State Law Claims Improperly Attempt to Circumvent the Strict Requirements Necessary to Establish Defamation .......... 26

2. Hawke Does Not State Viable Claims For Negligent Hiring and Supervision .......... 26

a. Hawke's Negligent Hiring Claim is Not Actionable Because Discovery Had No Way of Knowing that Teti Would Make Allegedly Defamatory Statements About Hawke .......... 27

b. Hawke's Negligent Supervision Claim is Not Actionable Because Teti Made the Posts Using His Own Devices and on His Personal Time .......... 29

3. Hawke's South Carolina Unfair Trade Practices Claim is Not Actionable Because He Cannot Prove its Elements .......... 31

4. Hawke's Intentional Interference with Contractual Relations Claim is Not Actionable Because He Cannot Prove its Elements .......... 32

IV. CONCLUSION .......... 33

## TABLE OF AUTHORITIES

Page

**CASES**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)....8

*Anderson v. United States*,
2016 WL 320076, 2016 U.S. Dist. LEXIS 9225 (D.S.C. Jan. 27, 2016) ....19, 21

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....9

*Baker v. Los Angeles Herald Examiner*,
42 Cal.3d 254 (1986) ....22

*Batzel v. Smith*,
333 F.3d 1018 (9th Cir. 2003) ....11, 13

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....21

*Bolin v. Bostic*,
235 S.C. 319 (1959)....18, 19

*Carafano v. Metrosplash.com Inc.*,
207 F.Supp.2d 1055 (C.D. Cal. 2002) ....15

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)....8

*Chapin v. Knight-Ridder, Inc.*,
993 F.2d 1087 (4th Cir. 1993) ....24

*Cloaninger v. McDevitt*,
555 F.3d 324 (4th Cir. 2009) ....9

*Cohen v. Cowles Media Co.*,
501 U.S. 663 (1991)....26

*Corbis Corp. v. Amazon.com, Inc.*,
351 F. Supp. 2d 1090 (W.D. Wash. 2004)....16

*Dang v. Smith,*
190 Cal.App.4th 646 (2010) ....9

*DeBerry v. McCain*,
275 S.C. 569 (1981)....32

*Deasy v. Hill*,
833 F.2d 38 (4th Cir. 1987) ....9

*Degenhart v. Knights of Columbus*,
309 S.C. 114 (1992)....29, 31

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Delfino v. Agilent Techs., Inc.*,
145 Cal.App.4th 790 (2006) ....12, 14, 15

*Dieter v. Baker Serv. Tools*,
739 S.W.2d 405 (Tex. Ct. App. 1987) ....28, 29

*Doe v. ATC, Inc.*,
367 S.C. 199 (Ct. App. 2005) ....27

*Doe v. Uber Techs., Inc.*,
184 F.Supp.3d 774, 789 (N.D. Cal. 2016) ....28

*Dongguk Univ. v. Yale Univ.*,
734 F.3d 113 (2d Cir. 2013)....26

*Dorsey v. Aetna Life Ins. Co.*,
2013 WL 1288165, 2013 U.S. Dist. LEXIS 42931 (E.D. Va. Mar. 26, 2013) ....9

*Drs. Stever and Latham, P.A. v. Nat'l Med. Enters., Inc.*,
672 F.Supp.1489 (D.S.C. 1987)....32

*Erickson v. Jones Street Publishers, LLC*,
368 S.C. 444 (2006)....24

*Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*,
521 F.3d 1157 (9th Cir. 2008) ....14, 15

*Faltas v. State Newspaper*,
928 F.Supp. 637 (D.S.C. 1996)....22

*Fram v. Yellow Cab Co.*,
380 F.Supp. 1314 (W.D. Pa. 1974)....22

*Fredrich v. Dolgencorp, LLC*,
2014 WL 4417407, 2014 U.S. Dist. LEXIS 124931 (D.S.C. Sept. 8, 2014)....19, 20, 21

*Gainey v. Kingston Plantation*,
2008 WL 706916, 2008 U.S. Dist. LEXIS 34014 (D.S.C. Mar. 14, 2008) ....26

*Gentry v. eBay, Inc.*,
99 Cal.App.4th 816 (2002) ....16

*George v. Fabri*,
345 S.C. 440 (2001)....25

*Global Telemedia Int'l., Inc. v. Doe 1*,
132 F.Supp.2d 1261 (C.D. Cal. 2001) ....23

*Gordon v. Dalrymple,*
2008 WL 2782914, 2008 U.S. Dist. LEXIS 51863 (D. Nev. July 8, 2008) ....23

**TABLE OF AUTHORITIES**

(continued)

**Page**

*Greenbelt Coop. Pub. Ass'n v. Bresler*,
398 U.S. 6 (1970)....................22

*Grillo v. Smith*,
144 Cal.App.3d 868 (1983)....................23

*Harte-Hanks Comm'ns, Inc. v. Connaughton,*
491 U.S. 657 (1989)....................25

*Havird Oil Co. v. Marathon Oil Co.*,
149 F.3d 283 (4th Cir. 1998)....................31

*Jones v. Dirty World Entm't Recordings LLC*,
755 F.3d 398 (6th Cir. 2014)....................11, 14

*Kase v. Ebert*,
392 S.C. 57 (Ct. App. 2011)....................30

*Klayman v. Zuckerberg*,
753 F.3d 1354 (D.C. Cir. 2014)....................13

*Land v. Green Tree Servicing, LLC*,
2014 WL 5527854, 2014 U.S. Dist. LEXIS 154879 (D.S.C. Oct. 31, 2014)....................30

*Lieberman v. Fieger*,
338 F.3d 1076 (9th Cir. 2003)....................22

*McClain v. Arnold*,
275 S.C. 282 (1980)....................25

*Moore by Moore v. Berkeley Cnty. Sch. Dist.*,
326 S.C. 584 (Ct. App. 1997)....................29

*Moricle v. Pilkington*,
462 S.E.2d 531 (N.C. Ct. App. 1995)....................28

*Music Grp. Macao Commer. Offshore Ltd. v. Does*,
82 F.Supp.3d 979, 985 (N.D. Ca. 2015)....................23

*Nordberg v. Trilegiant Corp.*,
445 F.Supp.2d 1082 (N.D. Cal. 2006)....................18

*Oakland Raiders v. Nat'l Football League*,
131 Cal.App.4th 621 (2005)....................9

*Odom v. CVS Caremark Corp.*,
2016 WL 4536341, 2016 U.S. Dist. LEXIS 117031 (D.S.C. Aug. 31, 2016)....................19, 20

*Old Dominion Branch No. 496 v. Austin*,
418 U.S. 264 (1974)....................22

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Parisi v. Sinclair*,
774 F.Supp.2d 310 (D.D.C. 2011) ....................15

*Peeler v. Spartanburg Herald-Journal Division of the New York Times Company*,
681 F.Supp. 1144 (D.S.C. 1988) ....................25

*Smithfield Foods, Inc. v. United Food & Commer. Workers Int'l Union*,
585 F.Supp.2d 815 (E.D. Va. 2008) ....................26

*Stack v. Jaffee*,
248 F.Supp.2d 100 (D. Conn. 2003) ....................23

*Summit Bank v. Rogers*,
206 Cal.App.4th 669 (2012) ....................23

*Sunshine Sportswear & Elecs., Inc. v. WSOC Television, Inc.*,
738 F.Supp. 1499 (D.S.C. 1989) ....................25, 31

*Swinton Creek Nursery v. Edisto Farm Credit, ACA*,
334 S.C. 469 (1999) ....................17

*Tavoulareas v. Piro*,
817 F.2d 762 (D.C. Cir. 1987) ....................24

*Time, Inc. v. Johnston*,
448 F.2d 378 (4th Cir. 1971) ....................24, 4

*Woodward v. Weiss*,
932 F. Supp. 723 (D.S.C. 1996) ....................22

*Young v. FDIC*,
103 F.3d 1180 (4th Cir. 1997) ....................19

*Zeran v. Am. Online, Inc.*,
129 F.3d 327 (4th Cir. 1997) ....................11, 13, 14, 15

**STATUTES**

47 U.S.C. § 230 ....................11, 12, 14

S.C. Code § 39-5-10(b) ....................31

S.C. Code § 39-5-20(a) ....................31

**OTHER AUTHORITIES**

Fed. R. Civ. P. 56(a) ....................8

## I. INTRODUCTION

This lawsuit involves a war of words on Facebook that has no place in federal court. The only remaining defendants, Discovery Communications, LLC and Discovery Communications, Inc. (collectively, "Discovery") did not make or contribute to any of the offending posts and played no role in creating the underlying statements. The entire case should therefore be dismissed on summary judgment.

Plaintiff Mykel Hawke ("Hawke") and Joseph Teti ("Teti") are television stars who are former friends and military colleagues. For years, they have exchanged petty insults over social media, impugning each other's honesty, military credentials, and mental acuity. They then began to sue each other: Hawke filed an action against Teti in Texas state court and obtained a protective order. Teti thereafter filed a defamation lawsuit against Hawke in North Carolina, and Hawke then brought the same claim against Teti in this Court. The Court dismissed Teti for lack of personal jurisdiction, which should have ended this case. However, Hawke continued to pursue claims against Discovery, seeking to hold the television network liable for Facebook posts made by Teti and others.

After 15 months of discovery, Hawke's theories remain legally unclear and factually unsubstantiated. He apparently contends that Discovery is responsible for Teti's posts because Teti was on-air talent for one of Discovery's television shows when the comments were made, and because Teti posted one of the comments on a Facebook page administered by Discovery. But Discovery cannot be held liable as a matter of law, for at least three independent reasons:

First, it is undisputed that Discovery played no role in creating or developing the allegedly defamatory Facebook posts and, under Section 230 of the Communications Decency Act ("CDA"), is not liable as the "publisher" of these statements. Hawke's threadbare allegations and general principles of vicarious liability cannot pierce this broad immunity.

Section 230 was expressly enacted to maintain the robust nature of internet communications and prevent the chilling of free speech. The CDA bars each of Hawke's claims because they all arise out of allegedly defamatory Facebook posts that Discovery did not create.

Second, Discovery cannot be held vicariously liable for Teti's conduct, because Teti's statements were not made within the course and scope of his duties for Discovery or in furtherance of Discovery's business. It is undisputed that Teti posted the statements on his own time, using his own equipment, and without Discovery's knowledge.

Third, each of Hawke's causes of action is flawed in its own right. All of the statements at issue in Hawke's defamation, libel and slander claims constitute opinion or otherwise non-factual statements that are not actionable as a matter of law. Even if any of the statements were sufficiently factual and false, the undisputed facts show that they were all made about a public figure by a person who believed them to be true. Hawke therefore cannot establish the constitutionally required "actual malice."

Hawke's other state law claims for negligent hiring and supervision, unfair trade practices and intentional interference with contract must be dismissed because they are wholly derivative of Hawke's defamation claims and therefore require proof of actual malice that Hawke cannot provide. They should also be dismissed because the undisputed facts do not support the claims as a matter of law: Discovery cannot be liable for negligent hiring and supervision because it did not and could not have known that Teti would make defamatory statements about Hawke—and would have no way to prevent Teti from speaking even if it had such knowledge. Discovery cannot be liable for intentional interference with contract because, among other things, Hawke has not identified the existence of any valid contract with which Discovery interfered. Finally, Discovery cannot be liable for violations of South Carolina's

Unfair Trade Practices Act because, among other things, Teti's statements have nothing to do with trade or commerce.

Discovery should not be required to continue to defend itself against a schoolyard squabble it has been unfairly dragged into. The lawsuit has served only to waste the time and resources of both the parties and the Court, and should be rejected on summary judgment.[1]

## II. FACTUAL SUMMARY

### A. Mykel Hawke and Joe Teti are Brothers in Arms and Friends

Hawke and Teti are both elite soldiers turned reality television stars. Affidavit of Joseph Teti ("Teti Aff.") ¶ 22; Affidavit of Edward Fenno ("Fenno Aff."), Exh. A [Deposition of Mykel Hawke ("Hawke Dep.") 11:16-36:2]. Hawke was a Special Forces Green Beret officer in the U.S. Army. Teti Aff. ¶ 22; Fenno Aff., Exh. A [Hawke Dep. 200:14-201:6]. Teti served in the U.S. Marine Corps and Army National Guard, where he was also a Special Forces Green Beret and served under Hawke. Teti Aff. ¶ 2. During this time, Hawke and Teti became friends and remained so for many years. *Id.* at ¶ 22; Fenno Aff., Exh. A [Hawke Dep. 289:8-12].

### B. Hawke Becomes a Television Star and Hires Teti to Provide Personal Security for His Family

Sometime in 2008, after Hawke left the military, he entered show business. Since that time, Hawke has been the star of several nationally broadcast television shows and has appeared in approximately 30 others. He is a best-selling author, has a federally registered trademark in

---

[1] The Court has requested that the parties show cause by February 10, 2017 why this action should not be transferred or dismissed for lack of venue. (ECF No. 80). As Discovery will discuss in response to the OSC, Discovery believes the case should be resolved on summary judgment prior to any consideration of a venue change. While Discovery certainly did not ask to be sued in South Carolina, the case has been pending here since August 2015, during which time it has been the subject of no less than eight contested proceedings. Both written and deposition discovery are now complete, and, as discussed in this motion, the case is ripe for summary judgment. Discovery respectfully submits that it would be a waste of federal court resources to transfer the case prior to the Court ruling on this motion.

his name, and has been featured on several magazine covers. He has also been interviewed in *Time* and *Playboy*, as well as on television shows such as *Good Morning America*. Fenno Aff., Exh. A [Hawke Dep. 19:19-21:6, 22:6-23:10, 30:18-31:7, 31:13-20, Exhs. 1 & 17].

In 2010, Hawke and his wife, Ruth England, became the co-stars of their own survival program on Discovery Channel called *Man, Woman, Wild*. Fenno Aff., Exh. A [Hawke Dep. 87:1-88:3]. More than one million viewers watched each episode. Fenno Aff., Exh. G [Deposition of Ruth Hawkeye ("Ruth Hawkeye Dep.") 61:23-62:3]. During the filming and production of the show, Hawke became concerned for the safety of his family members and young son, who travelled to the remote locations in which the show filmed. Fenno Aff., Exh. A [Hawke Dep. 286:16-288:15]. To protect his son and his son's nanny, Hawke hired Teti and their mutual friend Mike Donatelli to serve as personal security. *Id*. Around this time, Hawke inscribed a copy of his book to Teti, calling Teti his "most special s[pecial] f[orces] brother" and "the best there is." Affidavit of Joshua Berkley ("Berkley Aff.") ¶ 10, Exh. A.

**C. <u>Teti is Cast for *Dual Survival*</u>**

In early 2012, after *Man, Woman, Wild* ended production, Teti's personal security services were no longer needed, and Teti attempted to follow Hawke into show business. Teti auditioned for and was cast in a Discovery Channel show titled *Dual Survival*. Teti Aff. ¶ 24.

Once Teti was selected as the on-screen talent for the show, Discovery conducted a thorough background check on him, as was its standard practice. Affidavit of Carl Nicolaou ("Nicolaou Aff."), ¶¶ 6-7. The background check came back without any "red flags," and Discovery Talent Services, LLC[2] exercised its option for Teti to appear on the *Dual Survival* show. *Id*. at ¶ 7; Teti Aff. ¶ 6, Exh. A. Under that talent agreement, when the show was in

[2] Discovery Talent Services, LLC is not named as a defendant in this action.

production, Teti was expected to appear at the scheduled times and locations and participate in the filming as arranged by the production company. Berkley Aff. ¶ 4.

When the show was not in production, Teti owned and operated his own consulting and onsite military training company, Lone Operator, Inc. Berkley Aff. ¶ 6. Occasionally, Teti's duties for Discovery included being available to promote *Dual Survival* by appearing for various scheduled press appearances or interviews. *Id.*; Affidavit of Jennifer Williams ("Williams Aff."), ¶ 5. These were arranged by Discovery's talent relations team and would be scheduled around Teti's work with Lone Operator. *Id.*

Discovery's social media team maintained an official Facebook page for the *Dual Survival* show but Teti was not expected or authorized to post from it. Affidavit of Kevin O'Shaughnessy ("O'Shaughnessy Aff."), ¶ 5; Teti Aff. ¶¶ 16-19. Only members of Discovery's social media team had the administrative rights to issue official posts from and on behalf of the *Dual Survival* Facebook page. *Id.* Teti's ability to comment on posts made by the official Facebook page was the same as any member of the public. O'Shaughnessy Aff. ¶¶ 4-5; Teti Aff. ¶¶ 19-20. Teti also had at least one personal Facebook account, which Discovery did not administer or have the ability to post from. Teti Aff. ¶ 18; O'Shaughnessy Aff. ¶ 7.

### D. Hawke's Star Falls While Teti's Rises—and Animosity Ensues

Hawke and Teti's friendship deteriorated after Hawke's show was not renewed and Teti became the star of *Dual Survival*. Teti believed that Hawke became angry and/or jealous when Teti received the starring role on *Dual Survival*, and that Hawke began to post negative materials on the Internet about Teti as a result. Teti Aff. ¶ 25. And Hawke apparently blamed Teti for the death of their mutual friend, Mike Donatelli, in a tragic helicopter crash.[3] Although Teti was not

[3] Donatelli died in early 2013 while filming a reality show for Discovery about the U.S. military's lone operator test. Fenno Aff., Exh. A [Hawke Dep. 317:21-318:14, 322:9-18]; Teti

involved in the crash, Hawke turned on Teti, publicly claiming that Teti was responsible for Donatelli's death and impugning Teti's integrity by accusing him of "stolen valor." Fenno Aff., Exh. A [Hawke Dep. 326:12-16, 223:6-11]; Teti Aff. ¶ 26.

### E. Hawke Accuses Teti of "Defamation and Threats" and Asks Discovery to Intervene—But Refuses to Provide Support for His Accusations

On July 4, 2014, Teti contacted Discovery producer Josh Berkley to discuss the disparaging comments made about Teti by Hawke and his supporters on social media. Berkley Aff. ¶ 8. Teti also expressed his confusion and sorrow over the loss of his friendship with Hawke. *Id.*

On July 13, 2014, Hawke emailed a group of Discovery executives to complain about Teti. Williams Aff. ¶¶ 9-10, Exh. A. Hawke contended, without providing any examples, that Teti "recently used your network, television show, social media page for personal defamation and threats." *Id.* Hawke asked for an apology from Teti. *Id.* He also stated that he was copying his "legal team" and "in the absence of answer and/or some assistance from Discovery," he would seek some type of "remedy." *Id.*

Because Hawke's email was so vague, Discovery's Senior Vice President of Talent Management, Jennifer Williams, asked him to forward written evidence supporting his accusations against Teti. *Id.* Hawke refused, stating that he was "reluctant to provide [his] supporting documents at this time, in case they may be required in court." *Id.* He vaguely instructed Discovery to review "what is readily available online," "examine [Teti's] conduct" and "observe the public's perception of his improprieties." *Id.*

Unable to locate any threatening comments, Discovery nonetheless applied a filter to its official *Dual Survival* Facebook page to block any posts containing the words "Mykel" or

---

Aff. ¶¶ 10-12.



FL/LI/DIS002-1/1077_22

"Hawke." *Id*. at ¶ 11; O'Shaughnessy Aff. ¶ 7. The filter prevented anyone (including Teti) from posting about Mykel Hawke.

### F. Hawke and Teti Escalate Their Personal Feud by Filing Lawsuits Against Each Other in Texas and North Carolina State Courts

In September 2014, Hawke proceeded to file an action against Teti in Texas state court seeking a protective order for alleged stalking. Fenno Aff. ¶ 5, Exh. C. After Teti failed to appear for a hearing in that case, Hawke obtained the protective order. *Id*. at Exh. D.

Two months later, Teti filed an action against Hawke (and others) in North Carolina state court for defamation, abuse of process and related claims. *Id*. at ¶ 6, Exh. E; Teti Aff. ¶ 27. In March 2015, Teti sought and obtained an order reversing the Texas protective order and enjoining Hawke from publishing "any defamatory communications about or related to [Teti], including those on any Facebook page." Fenno Aff. ¶ 6, Exh. F.[4] Hawke paid Teti an undisclosed amount to settle the North Carolina case in April 2016. Teti Aff. ¶ 27.

While the North Carolina state court proceedings were pending, Hawke's attorney contacted Discovery and asserted that Hawke had been defamed by an unidentified Discovery employee on social media. Affidavit of Leah Montesano ("Montesano Aff.") ¶ 3, Exh. A. When Discovery's legal counsel responded to the letter and asked for specifics to substantiate the allegation, Hawke's attorney identified Teti as the author of the statements, but (like Hawke) refused to provide details about the statements, when they were made, or where they were published. *Id*. at ¶¶ 4-5, Exhs. B-D.

### G. Hawke Drags Discovery into His Personal Feud by Filing this Lawsuit

Even though he contended that Teti (not Discovery) defamed him by making unspecified statements, Hawke proceeded to file this lawsuit against both Teti and Discovery. In his First

[4] On information and belief, Teti failed to pay the bond to maintain the Preliminary Injunction, and therefore it did not remain in effect. Fenno Aff. ¶ 6.

Amended Complaint ("FAC"), Hawke identified three allegedly defamatory statements: (1) "three clinical psychologists have diagnosed Mykel Hawke as having Narcissistic Personality Disorder"; (2) "Mykel Hawke is mentally ill"; and (3) "Mykel Hawke is having his Special Forces Tab revoked by the Arm[y]." FAC, ECF No. 14, ¶ 12. This Court dismissed Teti from the case for lack of personal jurisdiction, which leaves Discovery defending a lawsuit over statements it did not make, arising from a personal feud it had nothing to do with.

## III. ARGUMENT

Summary judgment should be granted if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Only factual disputes that "might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). A plaintiff's failure to make a sufficient showing of proof on an essential element of his case renders all other facts immaterial, therefore entitling defendant to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

### A. Hawke's Allegations are Hopelessly Vague and Inconsistent

As noted above, before he filed this lawsuit, Hawke refused to identify the statements by Teti that he contends are defamatory. Now, even after amending his complaint and completing 15 months of discovery, Hawke continues to be vague and inconsistent about which statements are at issue.

Hawke's FAC alleges that Teti made three defamatory statements, that they were all made on or after July 4, 2014, and that they were posted to both Teti's personal Facebook page and the official Discovery *Dual Survival* Facebook page. FAC, ECF No. 14, ¶ 12. But in his written discovery responses, Hawke identified *15* allegedly defamatory statements, two of which

were made *before* July 4, 2014, and some of which were made by third parties with no affiliation to Discovery. Fenno Aff. ¶ 4, Exh. B [Plaintiff's Second Supplemental Response to Defendants' Interrogatories ("2nd Supp. Resp. to Interrogs."), Response No. 1]. Of these fifteen statements, Hawke identified only *one* that was made on Discovery's official *Dual Survival* Facebook page, made by Teti on June 29, 2014. But Hawke later contradicted himself yet again when he testified at his deposition that, over the July 4th weekend, "for the first time ever, Joe Teti went on your official 'Dual Survival' page as Joe Teti 'Dual Survival' and started making attacks." *Id.*, Exh. A [Hawke Dep. 184:17]. Hawke's failure to put Discovery on proper notice is reason alone to dismiss his claims. *Ashcroft v. Iqbal*, 556 U.S. 662, 698-99 (2009) (pleading must give "fair notice" of what the "claim is and the grounds upon which it rests") (internal quotation marks omitted). At the very least, Hawke should not be able to proceed with respect to statements or theories not contained in his FAC, especially when his discovery responses contradict the FAC. *See Cloaninger v. McDevitt*, 555 F.3d 324, 336 (4th Cir. 2009) ("[A] plaintiff may not raise new claims after discovery has begun without amending his complaint."); *Deasy v. Hill*, 833 F.2d 38, 41 (4th Cir. 1987) ("A complaint is meant to state the issues of a case so that the parties can conduct discovery and present their cases intelligently. Hinting at a claim . . . leaves the opposing party guessing at one's real intentions."); *see also Oakland Raiders v. Nat'l Football League*, 131 Cal.App.4th 621, 648 (2005) ("[T]he pleadings set the boundaries of the issues to be resolved at summary judgment. A plaintiff cannot bring up new, unpleaded issues in his or her opposing papers.") (internal quotation marks and citations omitted); *Dang v. Smith,* 190 Cal.App.4th 646, 664-66 (2010) (granting summary judgment on this basis); *Dorsey v. Aetna Life Ins. Co.*, 2013 WL 1288165, at *23 n.10, 2013 U.S. Dist. LEXIS 42931, at *69 n.10 (E.D. Va. Mar. 26, 2013) (same).

If the Court does consider allegedly defamatory statements first asserted in Hawke's discovery responses, these statements can be divided into several categories for ease of organization. Because of their length, the statements themselves are set forth in Hawke's interrogatory responses. Fenno Aff., Exh. B [2nd Supp. Resp. to Interrogs., Response No. 1].

Statement 14 – This statement (that Hawke is eaten up with jealousy) is the *only* one Hawke asserts was made by Teti and posted on the official Discovery *Dual Survival* Facebook page. As discussed below, this statement is not actionable because: the Communications Decency Act immunizes Discovery from liability for statements posted by Teti or others on its Facebook page; Teti was not acting within the course and scope of his duties for Discovery; and the statement is not defamatory as a matter of law.

Statements 1, 2, 3, 4, 5, 9, 11, 12 and 13 – Hawke asserts that Teti posted these statements (that Hawke is jealous, acts with rage and in a manner unbecoming a former military officer, and is sick and narcissistic) to his personal Facebook page or other Facebook pages Discovery does not administer. As discussed below, Discovery cannot be held legally responsible for statements posted to pages it does not control. In addition, Teti was not acting within the course and scope of his duties for Discovery, and the statements are not defamatory as a matter of law.

Statements 6, 7, 8, 10 and 15 – Hawke asserts that third parties (not Teti or Discovery) posted these statements (that Hawke has PTSD, is a liar, fake and fraud, was mentally disturbed, and forged paperwork). Hawke only asserts that No. 15 (that Hawke was mentally disturbed and forged paperwork) was posted on the official Discovery *Dual Survival* Facebook page. As discussed below, Discovery cannot be held liable under the doctrine of *respondeat superior* (or any other legal theory) for statements made by third parties with no relationship to Discovery.

### B. <u>The Communications Decency Act Immunizes Discovery from Liability Because Each of the Claims Arises from Statements Made by Teti or Third Parties That Were Not Created or Developed by Discovery</u>

Hawke acknowledges that Teti and various third parties, not Discovery, authored the allegedly defamatory statements. FAC, ECF No. 14, ¶¶ 36 ("Teti intentionally and maliciously made defamatory remarks about the Plaintiff"); 39 ("Teti made the defamatory remarks"); 41 ("Teti's defamation of Plaintiff was done willfully"); Fenno Aff., Exh. B [2nd Supp. Resp. to Interrogs., Response No. 1 (identifying third party statements)]. Nevertheless, Hawke asserts in a conclusory manner that Discovery *published* these statements. *See*, e.g., FAC, ECF No. 14, ¶ 45 ("Defendants, their agents and servants, have slandered the Plaintiff by knowingly publishing spoken false words and writing false statements, and untrue information about him"). Because Discovery played no role in creating or developing Teti's statements (or those of unrelated third parties), each of Hawke's claims is barred as a matter of law by Section 230 of the Communications Decency Act ("CDA"), which provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1).

Section 230 grants broad immunity to "*any cause of action* that would make service providers liable for information originating with a third-party user." *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997) (emphasis added). The purpose of the law is to minimize "the threat that tort-based lawsuits pose to freedom of speech in the new and burgeoning Internet medium" (*id.*) by overriding the common law rule by which publishers or distributors could be held vicariously liable for defamatory material prepared by others. *Jones v. Dirty World Entm't Recordings LLC*, 755 F.3d 398, 407 (6th Cir. 2014); *see Batzel v. Smith*, 333 F.3d 1018, 1026-27 (9th Cir. 2003) ("Absent § 230, a person who published or distributed speech over the Internet

could be held liable for defamation even if he or she was not the author of the defamatory text, and, indeed, at least with regard to publishers, even if unaware of the statement.").

Because Section 230 vindicates important free speech policies, it takes precedence over inconsistent principles of state and common law. *See* 47 U.S.C. § 230(e)(3) ("*No* cause of action may be brought and *no* liability may be imposed under any State or local law that is inconsistent with this section.") (emphasis added). For example, courts have recognized that Section 230 immunity applies to claims seeking to hold an employer liable for content produced by an employee, even if the employer could have faced liability at common law. *See, e.g., Delfino v. Agilent Techs., Inc.*, 145 Cal.App.4th 790, 805 (2006).[5] Hawke's allegations are similar to the facts of *Delfino*: an employee[6] sent anonymous emails and created posts on various Internet boards threatening bodily harm to various individuals. The victims of the messages alleged that the employer was liable for negligent supervision and other torts for failing to take measures to prevent the employee from making the *threats*. Granting summary judgment for the employer, the court held that plaintiffs' claims sought to hold the employer liable as the publisher or speaker of statements it did not create, and were therefore barred by Section 230 as a matter of law. *Id.* at 808.

To establish immunity under Section 230, courts consider three elements: (1) the defendant must be a provider or user of an interactive computer service; (2) the cause of action at issue must treat the defendant as a publisher or speaker of the information; and (3) the

---

[5] A defendant employer is not entitled to immunity against claims based on the publication of information if it is "responsible, in whole or in part, for the creation or development of [the] information." 47 U.S.C. § 230(f)(3). But if the employer is not responsible for the creation or development of the work, no liability attaches.

[6] Teti is not an employee of any Discovery entity, but the issue of his employment status need not be resolved for purposes of this motion.

information at issue must have been provided by another information content provider. *See Batzel*, 333 F.3d at 1037. As demonstrated below, each of these elements is present here.

**1. Discovery is a Provider and/or User of an Interactive Computer Service Because it Administers an Official Facebook Page**

Courts have broadly interpreted the term "interactive computer service" to include listservs, social media pages, and message boards. *See id.* at 1026-27 n.15 (collecting cases). As Hawke alleges (FAC, ECF No. 14, ¶ 11), Discovery created and administers an interactive official Facebook page for *Dual Survival* that permits users to share information, opinions and content, and therefore necessarily uses the Facebook interface. O'Shaughnessy Aff. ¶¶ 4-6. Discovery is thus a "provider" (*Klayman v. Zuckerberg*, 753 F.3d 1354, 1356 (D.C. Cir. 2014)) and "user" of interactive computer services under the CDA. *Batzel*, 333 F.3d at 1030-31.

**2. Hawke's FAC Treats Discovery as a "Publisher" of the Statements Because Hawke Asserts that Discovery Published the Statements**

Hawke does not allege that Discovery actually made any of the statements giving rise to his claims for Defamation (Second Cause of Action), Slander (Third), and Libel (Fourth). FAC, ECF No. 14, ¶¶ 11-12. Nonetheless, Hawke alleges that Discovery is liable for these statements because they were "published" on Discovery's official *Dual Survival* Facebook page and because Discovery "failed to intervene and prevent Defendant Teti from posting defamatory statements on websites, owned, operated, and controlled by them." FAC, ECF No. 14, ¶¶ 15, 45; *see* Rule 26(f) Report, ECF No. 41-1, 13, 17 (same). Where, as here, a plaintiff casts an interactive service provider in the "same position as the party who originally posted the offensive messages," the plaintiff treats the interactive service provider as a publisher of the messages. *Zeran*, 129 F.3d at 333.[7]

---

[7] Contradicting his FAC, Hawke appears to assert in his written discovery responses that all but one of the statements were posted to pages other than Discovery's own official *Dual Survival*

### 3. Teti and Other Third Parties, Not Discovery, are the Information Content Providers Because they Made the Statements Without Material Contribution by Discovery

Section 230(f)(3) defines the term "information content provider" as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." An interactive service provider like Discovery can be held liable under Section 230 only if it "contributes materially to the alleged illegality of the conduct." *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1168 (9th Cir. 2008). This "does not mean merely taking action that is necessary to the display of allegedly illegal content. Rather, it means being responsible for what makes the displayed content allegedly unlawful." *Jones*, 755 F.3d at 410.

The *Delfino* decision is again on point. In that case, the court found that an employer was immune from liability under Section 230 because the employee "was the party who authored the offensive e-mails and postings," and there was no evidence that the employer played any role in the "creation or development" of the messages. 145 Cal.App.4th at 807. The court further observed that, "even had [employer] played some minor role in the formulation of [employee's] messages—a matter unsupported by the evidence here—such conduct would not transform it to the status of an information content provider to defeat CDA immunity." *Id.* at 807 n.24.

Here, as in *Delfino*, Hawke does not contend, and there is no evidence, that Discovery played *any* role in "creating or developing" the statements, much less "materially contributing" to them. Hawke does not assert that Discovery authored or contributed to the statements, only that it "failed to take action to stop the defamatory statements from being posted online." FAC,

---

Facebook page. Fenno Aff., Exh. B [2nd Supp. Resp. to Interrogs., Response No. 1]. Even if the Court were to consider these assertions, they do not change the fact that the FAC casts Discovery as a publisher of the statements—which is the relevant standard. *Zeran*, 129 F.3d at 333. Regardless, as discussed below, Discovery cannot legally control statements posted to pages it does not administer.

ECF No. 14, ¶¶ 17, 29. But as a matter of law, a party cannot lose immunity under the CDA by allowing a post to be made (*Roommates.Com, LLC*, 521 F.3d at 1168-69) or even by delaying in removing a post (*Zeran,* 129 F.3d at 330-33). *See Delfino*, 145 Cal.App.4th at 390 (allegation that employer "knew" employee sent messages was insufficient).

At a minimum, Hawke's allegations "lack[ ] sufficient factual content to allow the reasonable inference that [Discovery] is liable." *Parisi v. Sinclair*, 774 F.Supp.2d 310, 316 (D.D.C. 2011). Hawke does not identify facts supporting that Discovery knew Teti or the other third parties were going to make the posts beforehand, much less that it had knowledge of their content. Courts have rejected similarly threadbare allegations in the CDA context. *Id.* (rejecting liability where plaintiff did not allege facts that could give rise to the inference that defendant "was involved with the creation or development of the . . . statements").

Even if Hawke's allegations were legally sufficient, they are contradicted by the undisputed evidence, which shows that Discovery was not aware of the posts beforehand and certainly had no hand in their creation. Discovery only learned that Teti had allegedly made defamatory Facebook posts after Hawke so informed him, and Hawke never identified the posts (despite Discovery's requests) or advised Discovery of any third party posts. Nonetheless, out of an abundance of caution, Discovery applied a "filter" that prevented any posts referencing "Mykel" or "Hawke" from being displayed on its page. O'Shaughnessy Aff. ¶ 7. In doing so, Discovery exceeded its obligations under Section 230.

**4. CDA Immunity Bars All of Hawke's Claims**

Immunity under the CDA does not just apply to Hawke's claims for defamation, slander and libel. *Delfino*, 145 Cal.App.4th at 806-07. CDA immunity can bar a variety of claims other than defamation, including claims for negligence (First Cause of Action), unfair business practices (Fifth), and tortious interference (Sixth). *See Carafano v. Metrosplash.com Inc.*, 207

F.Supp.2d 1055, 1075-76 (C.D. Cal. 2002) (negligence), *aff'd* 339 F.3d 1119 (9th Cir. 2003); *Gentry v. eBay, Inc.*, 99 Cal.App.4th 816, 830, 836 (2002) (unfair business practices); *Corbis Corp. v. Amazon.com, Inc.*, 351 F. Supp. 2d 1090, 1117 (W.D. Wash. 2004) (tortious interference), *recognized as abrogated on other grounds in Cosmetic Ideas, Inc. v. LAC/InterActiveCorp.*, 606 F.3d 612, 615 n.4 (9th Cir. 2010). It is not the label of the claim that is determinative, but whether it arises from the offending statements.

Hawke's claims for negligence, unfair business practices, and tortious interference each arise from statements made by Teti and each incorporates by reference Hawke's allegations that Discovery published the statements. For example, Hawke asserts that Discovery is liable for negligence because it "clearly had the *ability to prevent Joseph Teti from defaming the Plaintiff* while on social media." Rule 26(f) Report, ECF No. 41-1, 15 (emphasis added). Hawke asserts that Discovery is liable for unfair trade practices because it "knew or should have known that *Joseph Teti's conduct [making the offending statements]* was in violation" of South Carolina's Unfair Trade Practices Act. *Id.* at 12 (emphasis added). And he asserts that Discovery is liable for intentional interference with contractual relations because "Defendants . . . defam[ed] the Plaintiff . . . to business associations and partners." FAC, ECF No. 14, ¶¶ 12, 69. But the only defamatory statements he identifies in his FAC and discovery responses (in which he was under an obligation to identify all defamatory statements "about which [he was] suing") were made by Teti individually and other third parties, not Discovery. Fenno Aff., Exh. B [2nd Supp. Resp. to Interrogs., Response No. 1]; ECF No. 14.

Indeed, in his opposition to a Motion to Dismiss filed by Discovery, Hawke admitted that *all* of the state law claims he had alleged to that point[8] arose out of Discovery's publication of

---

[8] Hawke did not assert his claim for intentional interference with contract until his FAC, but

third party content, stating that, *"[a]s a result of the defamatory statements made by [Teti] … and publicized by [Discovery]* … Plaintiff has suffered damages leading to the filing of his Complaint which includes causes of action for Negligent Hiring, Training and Supervision, Defamation, Slander, Libel, and violations of the Unfair Trade Practices Act." Opp. to Mtn. to Dismiss, ECF No. No. 13, 3-4 (emphasis added).

### C. Even if Section 230 Did Not Apply, Discovery is Not Vicariously Liable for The Statements Because they Were Made by Teti Outside the Scope of His Obligations to Discovery

#### 1. Hawke Fails to Allege Vicarious Liability

Hawke has alleged three related causes of action for defamation against the Discovery Defendants: Defamation (Second Cause of Action), Slander (Third) and Libel (Fourth). "Defamatory communications take two forms: libel and slander. Slander is a spoken defamation while libel is a written defamation or one accomplished by actions or conduct." *Swinton Creek Nursery v. Edisto Farm Credit, ACA*, 334 S.C. 469, 484 (1999). They are governed by the same legal standards. *See id.* at 484-485. Hawke has not identified any spoken statements for which he seeks to hold Discovery liable (FAC, ECF No. 14; Fenno Aff., Exh. B [2nd Supp. Resp. to Interrogs., Response No. 1]), so his claim for slander should be dismissed on that ground alone.

As discussed above, Hawke does not assert that Discovery actually made any of the statements at issue, but nevertheless asserts in a conclusory manner that Discovery is somehow liable for them. Although the FAC is entirely unclear as to the basis for its alleged liability, Hawke seems to be relying on the doctrine of *respondeat superior*, on the theory that Discovery should be vicariously liable for the acts of Teti and other third parties. However, nowhere in Hawke's complaint are "respondeat superior" or "vicarious liability" even mentioned, let alone

---

based on the language outlined above (FAC, ECF No. 14, ¶¶ 12, 69), his interference claim is also based on the allegedly defamatory statements.

alleged. As a result of Hawke's failure to put Discovery on fair notice of these claims, the Court should not consider them. *See Nordberg v. Trilegiant Corp.*, 445 F.Supp.2d 1082, 1103 (N.D. Cal. 2006) (dismissing claims where plaintiffs did not make "specific factual allegations about any actions taken by [defendant] that establish it could be found indirectly liable").

Even if Hawke had specifically alleged vicarious liability, he cannot establish as a matter of law that Discovery is vicariously liable for any of the alleged statements. Discovery cannot be liable for the statements identified in Hawke's discovery responses purportedly made by third parties (Nos. 6, 7, 8, 10, and 15) because they were made by individuals who do not work for and have no connection to Discovery—and Hawke does not allege any theory by which Discovery could be held liable. With respect to Teti's alleged statements, Discovery cannot be liable because, as discussed below, they were not made in the course and scope of employment.

### 2. Teti's Statements Were Not Made in the Course and Scope of His Role at Discovery

An employer may only be held vicariously liable for the tortious conduct of an employee when those acts occur within the course and scope of employment. *Bolin v. Bostic*, 235 S.C. 319, 322 (1959). Although Hawke has asserted that Teti (whom he contends made most of the allegedly defamatory statements) was employed by Discovery, Teti in fact was hired as an independent contractor of a different entity, Discovery Talent Services LLC, that has not been named in this lawsuit. Teti Aff. ¶ 5, Exhs. A-D.[9] But it is unnecessary to resolve Teti's employee status for purposes of this motion. Even if Teti were an employee of one of the named Defendants (he is not), Hawke's claims fail as a matter of law because he cannot establish that Teti was acting within the course and scope of employment when he made the statements. *See*

[9] Teti's Talent Agreement with Discovery Talent Services states that he "acknowledges and agrees that [he] is an independent contractor and that [he] is not an employee" of Discovery "for any purpose." Teti Aff., Exh. A, § 4(a).

*Bostic*, 235 S.C. at 322-23 (court "need not decide" whether tortfeasor was agent or independent contractor because "testimony conclusively show[ed] that he was not acting within the scope of his agency or employment at the time of the accident").

To establish that Teti was acting within the course and scope of his role at Discovery when he posted the statements, Hawke must show that Teti's acts were both: "(1) reasonably necessary to accomplish the purpose of the employee's employment; *and* (2) in furtherance of the master's business." *Fredrich v. Dolgencorp, LLC*, 2014 WL 4417407, at *6, 2014 U.S. Dist. LEXIS 124931, at *15-*16 (D.S.C. Sept. 8, 2014) (emphasis added). Courts should grant summary judgment when the undisputed evidence shows that a plaintiff cannot meet this burden. *See Odom v. CVS Caremark Corp.,* 2016 WL 4536341, at *3-*4, 2016 U.S. Dist. LEXIS 117031, at *9-*11 (D.S.C. Aug. 31, 2016) (granting summary judgment where plaintiff failed to set forth evidence that employee was acting within course and scope of employment).

"[A]n act falls within the scope of employment only if the employee acted with the purpose of benefiting the employer." *Young v. FDIC*, 103 F.3d 1180, 1190 (4th Cir. 1997). But "[*i*]*f the employee acted for some independent purpose of his own, the conduct falls outside the scope of his employment." Id.* (emphasis added). Thus, even if an employee were otherwise acting on behalf of his employer, if the employee "steps aside from the employer's business for some purpose wholly disconnected with his employment, the relation of master and servant is temporarily suspended *no matter how short the time* the employee steps away," and the employer is not liable for the employee's acts during such time. *Anderson v. United States*, 2016 WL 320076, at *9, 2016 U.S. Dist. LEXIS 9225, at *29 (D.S.C. Jan. 27, 2016) (Cain, J.) (emphasis added) (internal alterations and quotation marks omitted).

In cases involving allegations of defamation, an employer is not responsible for statements made by employees regarding matters outside their course and scope even if the statements were made during the work day while the employee was otherwise performing work. *See Fredrich*, 2014 WL 4417407, at *12 (company not liable for cashier's statement about coworker because there was no evidence that cashier's "usual and customary duties . . . also entailed authority to speak for the company about personnel matters"); *Odom*, 2016 WL 4536341, at *4 (summary judgment granted for employer where employee's defamatory statements about the reasons for employee's termination were not part of employee's job or authorized by employer, and were thus outside the course and scope of employment).

Here, even assuming Teti were an employee (he is not), the undisputed evidence shows that his statements about Hawke were outside the course and scope of his duties at Discovery. Under the terms of the Talent Agreement and in practice, Teti's role was to be on-camera talent, and an expert and producer for *Dual Survival*. Teti Aff. ¶ 11, Exh. A. It was not "reasonably necessary" for Teti to make statements about Hawke to accomplish these purposes. *Fredrich*, 2014 WL 4417407, at *6. Occasionally, Teti's duties included making himself available to promote the show by appearing for press appearances or interviews arranged by Discovery's talent relations teams. Berkley Aff. ¶ 4. At no time did Teti's duties include discussing Hawke on social media on behalf of Discovery or the *Dual Survival* show. *Id.* Discovery never encouraged Teti to air personal grievances about any particular individual. Williams Aff. ¶¶ 6-7; Teti Aff. ¶¶16-17. Discovery certainly never encouraged Teti to comment on Hawke, much less to make statements about his mental state or military background. *Id.* To the contrary, like the *Johnson* and *Odom* plaintiffs, Teti made the statements entirely on his own: they were posted

during his own free time (not on set)[10] and using his own Internet access and devices. *Id.* Putting aside Hawke's conclusory allegations that Discovery "knew" about and did not stop the posts, which the Court need not accept (*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)),[11] Hawke does not meaningfully dispute any of this evidence.

Not only were the statements at issue not "reasonably necessary" to accomplish Teti's role, they were also not made in furtherance of Discovery's business (a television network) because it "is hard to fathom any supposed business purpose those statements would serve." *Fredrich*, 2014 WL 4417407, at *10 (internal quotation marks omitted); *see Anderson*, 2016 WL 320076, at *11 ("[N]o reasonable juror could conclude that the sexual encounter between [third party] and [employee] furthered the interests of the [employer]."). Hawke does not assert, and there is no evidence showing, that Teti sought to generate interest, ratings or advertising dollars for a show about surviving in the wild by airing personal grievances that did not reference and had nothing to do with the show. To the contrary, Hawke admits that Teti's statements were made "for the *sole* purpose . . . to harm the reputation of Plaintiff thereby injuring the plaintiff." Rule 26(f) Report, ECF No. 41-1, 2. Thus, like the plaintiff in *Armstrong*, the undisputed evidence shows that Teti acted for his "own personal reasons and not for any reason related to [his] employment." 371 S.C. at 277.

### D. <u>Teti's Statements are Not Defamatory</u>

Because Discovery cannot be liable for Teti's allegedly defamatory statements as a matter of law, it is unnecessary for the Court to determine whether the statements constitute

---

[10] Indeed, *Dual Survival* was on hiatus at the time Teti made many if not all of the statements. Berkley Aff. ¶ 5.

[11] When Hawke complained in summer 2014 that Teti was defaming him, Discovery did not even know what posts Hawke was complaining about because Hawke refused to identify them. Williams Aff. ¶¶ 9-11.

actionable defamation in the first place. If the Court were to consider this issue, however, it should find that, in the context of the public social media feud carried between Hawke and Teti, Teti's statements are not susceptible to defamatory meaning, but would be understood by the audience as conveying opinion and hyperbole as a matter of law. Further, there is no evidence that Teti or Discovery acted with constitutional "actual malice," and First Amendment principles therefore prevent Discovery from being held liable for the statements even if any are found to be factual and false.

**1. Teti's Statements are Opinion, Not Fact**

"Opinion statements, defamatory or otherwise, are not actionable unless they contain provably true or false factual connotations." *Woodward v. Weiss*, 932 F. Supp. 723, 726 (D.S.C. 1996) (internal quotation marks and alterations omitted). "Rhetorical hyperbole," "vigorous epithet[s]," "lusty and imaginative expression[s] of . . . contempt," and words used "in a loose, figurative sense" have all been found to be non-actionable. *See Old Dominion Branch No. 496 v. Austin*, 418 U.S. 264, 284-86 (1974); *Greenbelt Coop. Pub. Ass'n v. Bresler*, 398 U.S. 6, 14 (1970) (finding the term "blackmail" was not actionable when read in context). Whether a term "is hyperbole or whether it implies facts turns not on the word itself but on the context in which it is used." *Faltas v. State Newspaper*, 928 F.Supp. 637, 647 (D.S.C. 1996). Whether a statement is one of fact or opinion generally is a question of law to be decided by the court. *Baker v. Los Angeles Herald Examiner*, 42 Cal.3d 254, 260 (1986).

Teti's statements are opinions, not provable false assertions of fact. This is evident on the face of the alleged statements: Teti states, *inter alia*, that Hawke is jealous, acts with rage and in a way unbecoming a former military officer, and is mentally sick and narcissistic. Courts have found that similar statements are opinions, not facts. *See e.g., Lieberman v. Fieger*, 338 F.3d 1076, 1080 (9th Cir. 2003) ("mentally imbalanced"); *Fram v. Yellow Cab Co.*, 380 F.Supp. 1314,

1329-30 (W.D. Pa. 1974) ("paranoid" and "schizophrenic"); *Stack v. Jaffee*, 248 F.Supp.2d 100, 105 (D. Conn. 2003) ("jealous"); *Grillo v. Smith*, 144 Cal.App.3d 868, 871-72 (1983) ("angry").

Notably, at the same time that Hawke is suing Teti for referring to him as "mentally ill," Hawke gratuitously stated in his own deposition in this case that "I do personally believe he [Teti] is mentally ill." Fenno Aff., Exh. A [Hawke Dep. 181:20-23]. Hawke's testimony—apparently made without appreciating the irony—underscores that Teti's allegedly defamatory statement (that Hawke is "mentally ill") is not an assertion of provable fact. It also demonstrates why the Court should not spend any more time refereeing Teti and Hawke's schoolyard fight.

But even if it were a close call (it is not), the context in which the statements were made shows that they are opinions, not facts. The statements were made on social media, "where readers expect to see strongly worded opinions rather than objective facts." *Summit Bank v. Rogers*, 206 Cal.App.4th 669, 697 (2012); *Global Telemedia Int'l., Inc. v. Doe 1*, 132 F.Supp.2d 1261, 1267 (C.D. Cal. 2001) (finding that Internet postings were "full of hyperbole, invective, short-hand phrases and language not generally found in fact-based documents").[12] They were not made by someone purporting to be an expert about mental health, but a television personality. *Cf. Gordon v. Dalrymple,* 2008 WL 2782914, at *4, 2008 U.S. Dist. LEXIS 51863, at *11-*12 (D. Nev. July 8, 2008) (where psychologist stated plaintiff had "narcissistic personality disorder," his "position as a psychologist gives his statements more weight, raising them from opinion to fact"). They were made as part of a personal feud between Hawke and Teti, in response to statements made by Hawke. *See Music Grp. Macao Commer. Offshore Ltd. v. Does*, 82 F.Supp.3d 979, 985 (N.D. Ca. 2015) (social media posts were not defamatory because they were a "rant among countless others from someone with an obvious grudge"). And

---

[12] Hawke has himself recognized that social media posts deserve little credibility. Fenno Aff., Exh. A [Hawke Dep. 256:21-257:20, 331:17-332:3].

Teti disclosed his basis for making many of the statements (*i.e.*, people had told him, he had done his own research, etc.). *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1093 (4th Cir. 1993) ("Because the bases for the . . . conclusion are fully disclosed, no reasonable reader would consider the [words] anything but the opinion of the author drawn from the circumstances related."). This context makes clear that the statements represent Teti's personal opinions, and not provably false assertions of fact.

### 2. Neither Discovery Nor Teti Acted with "Actual Malice"

The undisputed evidence shows that Hawke is a "public figure." *See Time, Inc. v. Johnston*, 448 F.2d 378, 380 (4th Cir. 1971) (public figures include "anyone who is famous or infamous because of who he is or what he has done"); *Tavoulareas v. Piro*, 817 F.2d 762, 772 (D.C. Cir. 1987) (noting that well-known entertainers are "the archetypes of the general purpose public figure"). Hawke is a television star and best-selling author who has registered a trademark in his own name and has even identified himself as a "celebrity." Fenno Aff., Exh. A [*see, e.g.*, Hawke Dep. 12:5-79:18, 147:17-18, Exhs. 1, 2, 3, 36, 37].[13]

"[T]o prove fault in a defamation action, a plaintiff who is a . . . public figure must prove by clear and convincing evidence that the defendant acted with actual malice"—*i.e.*, with knowledge of its falsity or in reckless disregard of the truth. *Erickson v. Jones Street Publishers, LLC*, 368 S.C. 444, 467 (2006). Actual malice is a subjective test of the publisher's belief in the veracity of the statements. "There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." *Id.* at 477 (internal quotation marks omitted).

[13] In addition to being a general purpose public figure as a result of his celebrity status, Hawke is also a "limited purpose" public figure for the purpose of any controversy about his background, military career, television career and his dispute with Teti, all of which are public controversies into which Hawke has "thrust himself." *Erickson*, 368 S.C. at 473-74. *See* Fenno Aff., Exh. A [Hawke Dep. 42:6-69:15, 240:17-285:15, 334:20-355:7, 370:20-377:12, Exhs. 38, 41, 42].

"Summary judgment occupies a position of great importance in libel actions as compared with other civil actions, due to the possible chilling effect on constitutionally protected speech which would result from the defense of defamation claims." *Sunshine Sportswear & Elecs., Inc. v. WSOC Television, Inc.*, 738 F.Supp. 1499, 1505 (D.S.C. 1989). Thus, courts "have expressed a preference for the dismissal by summary judgment of libel cases . . . in order to prevent all but the strongest cases from proceeding to trial." *Id.* at 1506. In such cases, a trial court should grant summary judgment for the defendant unless pretrial affidavits, deposition or other documentary evidence show that the plaintiff can prove actual malice by clear and convincing evidence. *George v. Fabri*, 345 S.C. 440, 452-54 (2001). The plaintiff must come forward with "*concrete* evidence" in opposition to the motion as opposed to simply asserting that the defendant should not be believed. *Peeler v. Spartanburg Herald-Journal Division of the New York Times Company*, 681 F.Supp. 1144, 1147 (D.S.C. 1988) (emphasis in original) (*citing Anderson*, 477 U.S. at 256-257). Whether evidence is sufficient to support a finding of constitutional actual malice under the *New York Times* standard is a "question of law." *Harte-Hanks Comm'ns, Inc. v. Connaughton,* 491 U.S. 657, 685 (1989). Hawke cannot meet this standard: The undisputed evidence shows that Teti believed the statements were true when he made them, and therefore did not act with actual malice that could be imputed to Discovery. Teti Aff. ¶¶ 30, 32, 34, 36, 38, 39(d), 40, 44. There also is no evidence (much less clear and convincing evidence) that Discovery itself acted with actual malice given that it played no role in making the statements and was not even aware of them. As a matter of law, Hawke cannot overcome this complete lack of clear and convincing evidence of actual malice by relying on unsupported allegations or assertions. This is reason alone to reject the defamation claims. *See McClain v. Arnold*, 275 S.C. 282, 284-85 (1980) (granting summary judgment where no evidence of actual malice).

### E. Hawke's Ancillary Claims Should be Dismissed for Numerous Reasons

#### 1. Hawke's Other State Law Claims Improperly Attempt to Circumvent the Strict Requirements Necessary to Establish Defamation

As discussed above, Hawke's state law claims for Negligent Hiring and Supervision (First Cause of Action), violation of South Carolina's Unfair Trade Practices Act (Fifth), and Intentional Interference with Contractual Relations (Sixth) each arise from Teti's allegedly defamatory statements. Rule 26(f) Report, ECF No. 41-1, pp. 12, 14-15; FAC, ECF No. 14, ¶ 69; Oppo. to Mtn to Dismiss, ECF No. 13, 3-4. Hawke cannot use such ancillary claims "to avoid the strict requirements for establishing a libel or defamation claim." *Cohen v. Cowles Media Co.*, 501 U.S. 663, 671 (1991); *see Dongguk Univ. v. Yale Univ.*, 734 F.3d 113, 129-31 (2d Cir. 2013) (dismissing claim for negligence); *Smithfield Foods, Inc. v. United Food & Commer. Workers Int'l Union*, 585 F.Supp.2d 815, 818-22 (E.D. Va. 2008) (unfair trade practices and tortious interference). The Court should grant summary judgment with respect to these claims because Hawke cannot make an "end-run" around the First Amendment protections underlying defamation law by recasting his speech-based claims as ancillary ones.

#### 2. Hawke Does Not State Viable Claims For Negligent Hiring and Supervision

Hawke's First Cause of Action alleges claims for Negligent Hiring and Supervision.[14] These claims are addressed separately as the standards are different.

[14] Hawke also purports to assert a claim for negligent training, but this is not a separately actionable legal theory. *See Gainey v. Kingston Plantation*, 2008 WL 706916, at *7 n.4, 2008 U.S. Dist. LEXIS 34014, at *21 n.4 (D.S.C. Mar. 14, 2008) ("It does not appear that South Carolina recognizes a claim for negligent training separate and apart from one for negligent supervision.").

**a. Hawke's Negligent Hiring Claim is Not Actionable Because Discovery Had No Way of Knowing that Teti Would Make Allegedly Defamatory Statements About Hawke**

Like his defamation claims, the legal basis for Hawke's negligent hiring claim is less than clear, consisting of a conclusory allegation that Discovery is liable because it failed to "adequately monitor and supervise the hiring practices of its personnel to insure that only qualified applicants were hired" and "institute and follow reasonable hiring practices to insure that only qualified applicants were hired." FAC, ECF No. 14, ¶ 32; Rule 26(f) Report, ECF No. 41-1, pp. 14-15. Even if Hawke had properly alleged the elements of negligent hiring, the undisputed facts show that Discovery had no way of knowing at the time he was retained that Teti would make allegedly defamatory statements about Hawke.

To establish a negligent hiring claim, a plaintiff has the burden of demonstrating "two fundamental elements-knowledge of the employer and foreseeability of harm to third parties." *Doe v. ATC, Inc.*, 367 S.C. 199, 206 (Ct. App. 2005). A negligent hiring claim may be disposed of on summary judgment "when no reasonable factfinder could find the risk foreseeable or the employer's conduct to have fallen below the acceptable standard." *Id.*

Here, Hawke's negligent hiring claim fails because he has not specifically alleged or identified facts showing that Discovery's supposed failure to hire a "qualified" applicant created a foreseeable and undue risk of harm to Hawke. *See id.* Even if he had, there is no evidence that, at the time Discovery first entered into a Test Option Agreement with Teti (February 2012), it had any reason to foresee that its decision would create an undue risk that Teti would make defamatory statements about Hawke (or anyone else) in 2014, or that Discovery's decision to hire Teti fell below any acceptable standard. To the contrary, the undisputed evidence from the time of Teti's hiring shows that Discovery had every reason to believe that there was *no* animosity between Hawke and Teti. As of February 2012, the two were friends. They had

served together in the military, and Hawke hired Teti as a security guard to protect Hawke's family. In fact, Hawke introduced Teti to Discovery when Teti served in this role. Fenno Aff., Exh. G [Ruth Hawkeye Dep. 131:8-132:18, 148:20-25]; Teti Aff. ¶ 22.

Nevertheless, Discovery took additional precautions. In February 2012, prior to picking up its option on Teti's services in connection with *Dual Survival*, Discovery commissioned a third party to conduct a background check. Nicolaou Aff., ¶¶ 3-4, 6. Nothing in the resulting report put Discovery on notice that Teti was prone to making defamatory statements, either in general or to Hawke. *Id*. at ¶ 7. Where, as here, an employer conducts a background check, and it does not contain anything that the employer "knew or should have known" would give rise to the alleged wrongful conduct, then the employer did not act negligently. *See Moricle v. Pilkington*, 462 S.E.2d 531, 533-34 (N.C. Ct. App. 1995) (finding that, although defendant "was under no duty to do a criminal background check when hiring his employees," defendant followed "customary" hiring practices, and was not liable for negligent hiring or retention, where defendant inquired into employee's criminal record and did a reference check, and no questionable information turned up); *see also Doe v. Uber Techs., Inc*., 184 F.Supp.3d 774, 789 (N.D. Cal. 2016) (Uber was not liable for driver's wrongful conduct because plaintiffs did not allege that "anything existed in [driver's] background that Uber knew or should have known and that should have prevented Uber's approval of" the driver).

Even if Discovery negligently hired Teti (it did not), Hawke would have to establish that this was the "proximate cause" of Hawke's alleged injuries. *Dieter v. Baker Serv. Tools*, 739 S.W.2d 405, 408 (Tex. Ct. App. 1987) (there must be evidence that the plaintiff's injuries "were brought about by reason of the employment" of the employee). "Were such a connection not required, an employer would essentially be an insurer of the safety of every person who happens

to come into contact with his employee simply because of his status as an employee." *Id*. (internal quotation marks omitted). Here, Hawke's claimed injuries were in no way connected with the fact that Teti was (purportedly) hired by Discovery. Any harm allegedly suffered by Hawke from the statements at issue would be the same whether Teti had worked for Discovery or not—Teti still could have posted the statements on the official *Dual Survival* Facebook page and his own Facebook page and the alleged harm to Hawke would have been no different. Their feud was purely personal.

#### b. Hawke's Negligent Supervision Claim is Not Actionable Because Teti Made the Posts Using His Own Devices and on His Personal Time

Hawke also alleges in his First Cause of Action that Discovery is liable for negligently supervising Teti because it failed to "supervise and correct actions of its personnel when they knew or should have known that a pattern of questionable and defamatory practices and behavior existed." FAC, ECF No. 14, ¶ 32. Again, Hawke has not properly asserted the elements of a negligent supervision claim or put Discovery on notice of its claim. But even if he had, his vague and unsupported contention (which echoes his refusal to inform Discovery as to any specifics or evidence of defamation) is simply not actionable as a matter of law.

An employer may be liable for negligent supervision if the employee "intentionally harms another when the employee: (1) is upon the premises of the employer, or is using a chattel of the employer, (2) the employer knows or has reason to know that he has the ability to control his employee, *and* (3) the employer knows or should know of the necessity and opportunity for exercising such control." *Moore by Moore v. Berkeley Cnty. Sch. Dist.*, 326 S.C. 584, 590 (Ct. App. 1997) (emphasis added); *see Degenhart v. Knights of Columbus*, 309 S.C. 114, 117-18 (1992) (granting summary judgment on negligent supervision claim where employee was acting

in an "individual capacity" and employer thus had no duty to protect plaintiffs "from unreasonable risks resulting from [plaintiffs'] relationship with [employee] in [this] capacity").

Here, Hawke has not demonstrated that any, much less all, of the required negligent supervision elements are present. First, the undisputed facts show that Teti did not write or post the statements while on Discovery's premises and did not use Discovery's devices or its Internet service to make the statements. Williams Aff. ¶¶ 6-8; Teti Aff. ¶ 47. Nor could he: Discovery did not give Teti access to company devices or its internet. Williams Aff. ¶ 8. *See Kase v. Ebert*, 392 S.C. 57, 64 (Ct. App. 2011) (affirming summary judgment on negligent supervision claim where, despite employee's violent history, employer was not liable for violent act against third party because the act did not take place at employer's premises or involve the use of employer's chattels).

Second, there is no evidence showing that Discovery knew or had reason to know that it had the ability to control Teti's behavior. Discovery cannot control everything that Teti (or its other hired talent) does in his free time and with his own property. To find otherwise would require Discovery to have followed Teti (and other talent) around at all hours, predict what he was going to say or post before he did so, and then take steps to prevent him from making such comments. This would not only be unworkable, but impossible; Discovery (and other hiring parties) cannot be omniscient. There is no support for imposing a duty on Discovery to conduct extensive and permanent oversight, much less intrude into the private lives of those they hire.

Third, even if Discovery knew that it had some ability to control Teti's behavior, the undisputed facts show that Discovery neither knew nor should have known that such control was necessary. *See Land v. Green Tree Servicing, LLC*, 2014 WL 5527854, at *6, 2014 U.S. Dist. LEXIS 154879, at *14 (D.S.C. Oct. 31, 2014) (Cain, J.) ("Supervisory liability requires the court

to focus specifically on what the employer knew or should have known about the specific conduct of the employee in question”). Discovery did not know that Teti was making statements that Hawke believed were defamatory until Hawke advised it of this fact. Even then, Discovery did not know which statements Hawke believed were defamatory; when Discovery asked Hawke to identify the statements, he refused. Discovery still applied a protective “filter.” No reasonable trier of fact could find that Discovery exercised anything other than reasonable care in doing so. *Degenhart*, 309 S.C. at 117-18.

### 3. Hawke’s South Carolina Unfair Trade Practices Claim is Not Actionable Because He Cannot Prove its Elements

In his Fifth Cause of Action, Hawke vaguely contends that Discovery violated South Carolina’s Unfair Trade Practices Act (“UTPA”), contending that it knew or should have known that Teti’s statements violated the UTPA. FAC, ECF No. 14, ¶¶ 56-65; Rule 26(f) Report, ECF No. 41-1, p. 12. To establish a violation of the UTPA, Hawke must show: (1) defendant engaged in an unlawful trade practice; (2) plaintiff suffered actual, ascertainable damages as a result; and (3) the unlawful trade practice had an adverse impact on the public interest. *Havird Oil Co. v. Marathon Oil Co.*, 149 F.3d 283, 291 (4th Cir. 1998). Unlawful trade practices are “[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any *trade or commerce*.” S.C. Code § 39-5-20(a) (emphasis added). The UTPA defines “trade” and “commerce” as “the advertising, offering for sale, sale or distribution of any services and any property . . . directly or indirectly affecting the people of this State.” S.C. Code § 39-5-10(b). Courts have found that publishing allegedly defamatory content does not generally fall “within the embrace” of this definition. *See Sunshine Sportswear & Elecs.*, 738 F. Supp. at 1503-05 (granting motion to dismiss where publication characterized plaintiff’s business practices as a “rip off” because statements did not concern “trade” or “commerce” under the “limited scope” of

the UTPA). Likewise, statements arising from a personal feud about Hawke's military service and mental state do not involve the advertising or sale of any service or property. Even if they did, Hawke has not established that the statements concern the public interest, as required. *Drs. Stever and Latham, P.A. v. Nat'l Med. Enters., Inc*., 672 F.Supp.1489, 1521 (D.S.C. 1987). To the contrary, Hawke has acknowledged that Teti's statement hurt him *personally*, as opposed to the public at large. Fenno Aff., Exh. A [Hawke Dep. 378:14-380:13].

#### 4. Hawke's Intentional Interference with Contractual Relations Claim is Not Actionable Because He Cannot Prove its Elements

Finally, in his Sixth Cause of Action, Hawke generally asserts that "Defendants" interfered with Hawke's contracts because of unspecified "defam[atory]" statements apparently made to a competitor network. FAC, ECF No. 14, ¶¶ 66-70. To prove intentional interference with contractual relations, a plaintiff must establish: (1) the existence of a contract; (2) the wrongdoer's knowledge thereof; (3) its intentional procurement of its breach; (4) the absence of justification; and (5) damages resulting therefrom. *DeBerry v. McCain*, 275 S.C. 569, 574 (1981). Hawke has not alleged any facts or identified any evidence establishing these elements. He does not identify the contracts themselves,[15] the parties to the contracts, or their subject matter. Hawke also does not identify facts showing that Discovery was aware of the unidentified contracts, that it intentionally caused a breach of the contracts, or that its unspecified interference with unidentified contracts somehow caused him harm. Hawke's conclusory allegations and

[15] The only contract alleged in the FAC is one between Hawke and ABC Television/Lincoln Square Productions. FAC, ECF No. 14, ¶ 30. Hawke appears to contend that Discovery interfered with this contract by making unspecified defamatory statements to ABC. *Id*. But Hawke has not identified the supposed statements—even though his discovery responses purport to identify every statement "about which [he is] suing." Regardless, Hawke does not allege that Discovery was aware of the contract. And although Hawke has identified two draft, unsigned contracts in discovery, he is not even a party to those documents. Fenno Aff., Exh. A [Hawke Dep. 125:12-131:17].

subjective beliefs are no substitute for actual evidence.[16]

## IV. CONCLUSION

For each and any of the above reasons, the Court should grant summary judgment for Discovery on each of Hawke's claims.

Respectfully Submitted,

FENNO LAW FIRM, LLC

s/Edward T. Fenno
Edward T. Fenno (Fed. ID. No. 7498)
Christina B. Humphries (Fed. ID. No. 9984)
171 Church Street, Suite 160
Charleston, South Carolina 29401
Ph: (843) 720-3747
Fax: (843) 577-0460
Email: efenno@fennolaw.com
chumphries@fennolaw.com

ATTORNEYS FOR DEFENDANTS DISCOVERY COMMUNICATIONS, LLC AND DISCOVERY COMMUNICATIONS, INC.

February 6, 2017
Charleston, South Carolina

[16] In his deposition, Hawke suggested that an unidentified person at an unidentified Discovery entity told a competitor network something negative about Hawke that caused the competitor not to work with him. Fenno Aff., Exh. A [Hawke Dep. 139:17-140:19]. Even if the Court considers a legal theory that was not raised in the FAC and is not based on statements identified in the FAC or Hawke's discovery responses, Hawke conceded in his deposition that he does not know what the alleged statements were (*id.* [Hawke Dep. 152:20-22; 156:11-16; 158:10-159:6]) or who made them (*id.* [Hawke Dep. 153:8-154:3; 146:6-149:6]). A vague, unalleged theory that is undermined by Hawke's own pleadings, discovery responses and deposition testimony simply cannot be actionable as a matter of law.