IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Mykel Hawke<br><br>Plaintiff,<br><br>v.<br><br>Discovery Communications, LLC d/b/a The Discovery Channel; Discovery Communications, Inc.; and Joseph Teti[1]<br><br>Defendants. | ) | Civil Action No. 6:15-cv-3192-TMC<br><br>**ORDER** |

On January 26, 2017, the court filed an order requiring parties to show cause why the action should not be transferred due to improper venue. (ECF No. 80). Before the court is the response and motion to transfer venue of plaintiff Mykel Hawke ("Hawke"), (ECF No. 84); the response of defendants Discovery Communications, LLC and Discovery Communications, Inc. ("Discovery defendants"), (ECF No. 85); and Hawke's motion to stay the case pending resolution of his motion to transfer (ECF No. 86).

**BACKGROUND**

On June 16, 2015, Mykel Hawke ("Hawke") filed this case in the Court of Common Pleas for the Thirteenth Judicial Circuit for Greenville County, South Carolina, against Discovery defendants and Joseph Teti ("Teti"). (ECF No. 1-1). In his amended complaint, Hawke alleged that Teti was employed by Discovery Communications, LLC ("Discovery") from 2012 through the filing of the complaint. (ECF No. 14 at 2). He asserted that Teti posted defamatory remarks about Hawke on the social media Internet website, *Facebook*. *Id*. These posts were made on Teti's personal Facebook page and the official "Dual Survival" Facebook

[1] Defendant Joseph Teti was dismissed from the case on November 6, 2015. (ECF No. 37).

page owned by Discovery. *Id*. The amended complaint seeks damages based on these alleged defamatory statements.

On August 12, 2015, Defendants Discovery Communications, LLC and Discovery Communications, Inc. ("Discovery defendants") removed the case on the basis of diversity jurisdiction to federal court, with the consent of defendant Teti. (ECF No. 1). When the action was filed, Hawke was a resident of Travis County, Texas. (ECF No. 1 at 3). Discovery Communications, Inc. is a corporation organized and operating under the laws of Delaware with its principal place of business in Maryland. (ECF No. 1 at 3). Discovery Communications, LLC is a limited liability company with its sole member being Discovery Communications Holding, LLC. (ECF No. 67-1 at 1). Discovery Communications Holding, LLC is a limited liability company with the following membership: DHC Discovery, Inc. and Discovery Communications, Inc. *Id*. DHC Discovery, Inc. is a corporation organized and existing under the laws of Colorado with its principal place of business in Maryland. *Id*. Teti subsequently filed a motion to dismiss the action against him for lack of personal jurisdiction (ECF No. 23) which the court granted on November 6, 2015. (ECF No. 37).

On January 26, 2017, the court noted that there appears to be no connection between the parties and this district and filed an order questioning whether venue was proper, requiring the parties to show cause why the action should not be transferred or dismissed. (ECF No. 80).[2] On February 6, 2017, Discovery defendants filed a motion for protective order and sanctions (ECF No. 82) and a motion for summary judgment (ECF No. 83). Hawke filed a response to the court's order to show cause (ECF No. 80) and motion to transfer venue on February 10, 2017. (ECF No. 84). Discovery defendants also filed a response on February 10, 2017. (ECF No. 85). On February 13, 2017, Hawke filed a motion to stay the case pending the resolution of his

[2] No forum-selection clause is at issue in this case. (ECF No. 84 at 2).

motion to transfer venue. (ECF No. 86).

## DISCUSSION

### I. Law

Proper venue for actions filed in federal district court is ordinarily governed by 28 U.S.C. § 1391. When venue is improper under § 1391, the district court must dismiss the action or "if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

However, when an action is removed from state court to federal court, venue is governed exclusively by the federal removal statute, 28 U.S.C. § 1441(a). According to the United States Supreme Court, "Section 1441(a) expressly provides that the proper venue of a removed action is 'the district court of the United States for the district and division embracing the place where such action is pending.' " *Polizzi v. Cowles Magazines, Inc.*, 345 U.S. 663, 666 (1953) (quoting 28 U.S.C. § 1441(a)); *see also Hollis v. Fla. State Univ.*, 259 F.3d 1295, 1299 (11th Cir. 2001) ("by requiring removal to the district court for the district in which the state action is pending," Section 1441(a) "properly fixes the federal venue in that district"). Therefore, 28 U.S.C. § 1391 does not apply to actions that are removed. The only question necessary to answer to determine the propriety of venue is whether removal was effectuated to the district court "for the district and division embracing the place" in which the suit was originally filed. *Polizzi*, 345 U.S. at 665–66 (because the action was filed in the Circuit Court for Dade County, Florida, and was removed to the United States District Court for the Southern District of Florida—the district "embracing" Dade County—venue was proper according to § 1441(a) and there was no need to address where the corporate defendant "resided" for purposes of § 1391); *Hollis*, 259 F.3d at 1300 (observing that § 1441(a) establishes federal venue in the district where the state action was

pending "as a matter of law," even if venue would be "improper under state law when the action was originally filed").

Even in a situation in which venue is "proper," the district court has broad discretion to transfer a case to another district pursuant to 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." *See In re Ralston Purina Co.*, 726 F.2d 1002, 1005 (4th Cir. 1984) (decision to transfer case to an alternative venue rests within the sound discretion of the district court). When facing motions to transfer, district courts must engage in an analysis "according to an individualized, case-by-case consideration of convenience and fairness." *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988); *Landers v. Dawson Const. Plant, Ltd.*, 201 F.3d 436, 1999 WL 991419 at *2 (4th Cir. 1999) (unpublished table decision) (factors commonly considered include, "(1) the ease of access to the sources of proof; (2) the convenience of the parties and witnesses; (3) the cost of obtaining the attendance of the witnesses; (4) the availability of compulsory process; (5) the possibility of a view by the jury; (6) the interest in having local controversies decided at home; and (7) the interests of justice."); *see also Liam Motors, LLC v. M & A Auto Sales*, C.A. No. 4:13-1810-MGL, 2013 WL 5888581, at *3 (D.S.C. Oct. 31, 2013).

## II. Response by Hawke

In his response to the court's order, Hawke moved for the court to transfer venue to the Western District Court of Texas or, in the alternative, to the District Court of Maryland. (ECF No. 84). Hawke argues that the Western District of Texas is the appropriate venue because a

substantial part of the alleged events occurred in the Western District of Texas[3] and because he resided there when the alleged defamation originally occurred. Further, he asserts that the private interests of the litigants would be best served by a transfer to the Western District of Texas based on the fact that: the Western District of Texas has meaningful ties to the controversy; is convenient to Hawke; Discovery defendants would not be prejudiced by the transfer due to the fact that Discovery defendants have offices in Texas; and the current forum has no meaningful ties to the controversy. *Id.* at 8–9. Hawke asserts that public interest would be best served by transfer to the Western District of Texas because the Western District of Texas has less docket congestion and less of an administrative burden than the District of South Carolina; the Western District of Texas has a local interest in the controversy; and because litigating the case in the District of South Carolina would force citizens in a community with no connection to the case to serve on the jury. *Id.* at 10–11. Hawke requests, in the alternative, if the court determines that transfer to the Western District of Texas is not proper, that the action be transferred to the District of Maryland, the location of Discovery defendants' headquarters.

III. Response by Discovery Defendants

In Discovery defendants' response to the court's order, defendants state that the District of Maryland is the most appropriate venue for the action and that "the prerequisites for a Section 1404(a) transfer to the District of Maryland have been met." (ECF No. 85 at 7). However, Discovery defendants argue that, in the interests of judicial economy and efficiency, the court should rule on their motion for summary judgment (ECF No. 83) prior to making the decision to dismiss or transfer the action. *Id.* at 1. Discovery defendants argue that the court has invested

[3] Hawke details actions beyond online activity taken by Teti such as seeking out Texas residents to spread statements on his behalf and using a Texas company to create a website to spread statements about Hawke. (ECF No. 84 at 3–4).

significant time and resources in adjudicating pretrial issues and, accordingly, has better familiarity with the parties and issues of the case than a transferee court would have.

IV. Analysis

The court determines that transfer is warranted and that the District of Maryland is the most appropriate venue for this action. Pursuant to Section 1404(a), the District of Maryland is a district where the action may have been brought. Discovery Communications, Inc. has its principal place of business in Maryland and, as noted above, Discovery Communications, LLC is a resident of Maryland based on its member's residency. Thus, all defendants are residents of Maryland.[4] *See* 28 U.S.C. §§ 1332, 1391(b)(1). Furthermore, both parties agree that the District of Maryland is an appropriate venue. (ECF Nos. 84 at 11 and 85 at 7). Because neither party disputes that the District of Maryland is a feasible venue for this action, the court will focus its analysis on the issues of convenience and fairness.

An analysis of this case according to the factors laid out in *Landers* shows that the convenience of the parties, witnesses, and the interest of justice merit transfer to the District of Maryland. *Landers*, 1999 WL 991419 at *2. The first two factors, ease of access to the sources of proof and the convenience of parties and witnesses, both weigh strongly in favor of transfer to the District of Maryland. Six of Hawke's potential witnesses, identified in the joint Rule 26(f) report, reside in Maryland, more than any other state. (ECF Nos. 41-1 at 6–9, 85 at 7). Four of the six witnesses listed by Discovery defendants' in the joint Rule 26(f) report reside in

[4] Teti, who was dismissed from the action on November 6, 2015, does not affect whether venue is proper for the purposes of transfer. *See, e.g., In re Fine Paper Antitrust Litig.*, 685 F.2d 810, 819 (3d Cir. 1982) (finding transfer proper because, "[a]t the time of the transfer to the [transferee court], the action 'might have been brought' in the [transferee court] as to all of the parties remaining in the case."); 17 James Wm. Moore et al., *Moore's Federal Practice* § 111.12[4][b] (3d ed. 2012) (Regardless of the parties involved in the case at the time of its filing, "the action may nevertheless be transferred if the defendants as to whom venue in the transferee district would have been improper have settled or been dismissed from the action when the transfer motion is made.").

Maryland (all except for Hawke and former defendant Teti). (ECF Nos. 41-1 at 9–11 and 85 at 7).

Discovery defendants are both residents of Maryland and have no ties to South Carolina with no offices or employees in the state. (ECF No. 85 at 8). Discovery defendants agree with the court that there is no connection between the parties and this district. *Id*. Furthermore, Hawke agrees that transfer is warranted because there is a more appropriate venue in which to continue this suit. (ECF No. 84 at 11). Hawke has no alleged present connection to this district, nor has he alleged that he would be prejudiced by transfer to the District of Maryland. Because both defendants reside in Maryland, in addition to a large portion of witnesses (more so than any other state), transfer of the action from the District of South Carolina to the District of Maryland is favored for the convenience of parties and witnesses. Neither party asserts that any district would provide easier access to sources of evidence. Thus, due to the concentration of witnesses and the fact that both defendant businesses reside in Maryland, the ease of access to sources of proof also weighs in favor of transfer to the District of Maryland.

Additionally, the court questions whether the Western District Court of Texas would have personal jurisdiction over Discovery defendants. *See, e.g., ALS Scan, Inc. v. Digital Service Consultants, Inc.*, 293 F.3d 707 (4th 2002) (stating that for a court to exercise jurisdiction over a defendant based on the defendant's Internet activity, the court must find that the defendant, "(1) direct[ed] electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity create[d], in a person within the State, a potential cause of action cognizable in the State's courts."); *Young v. New Haven Advocate,* 315 F.3d 256, 263 (4th Cir. 2002) (the question of whether two Connecticut newspapers subjected themselves to personal jurisdiction in Virginia for posting articles online allegedly defaming a

Virginia resident depended on, "whether the newspapers manifested an intent to direct their website content . . . to a Virginia audience."). Transfer is possible only if both venue and personal jurisdiction are proper in the transferee forum. *See, e.g., Corry v. CFM Majestic Inc.*, 16 F. Supp. 2d 660, 663 (E.D. Va. 1998). The court is not convinced that the Western District of Texas is a feasible forum for this case. *See First South Bank v. Fifth Third Bank, N.A.*, C.A. No. 7:10-cv-2097-JMC, 2011 WL 3419451, at *3 (D.S.C. Aug. 3, 2011) (the burden is on the moving party to demonstrate that a transfer of venue is appropriate).

As for the cost of obtaining the attendance of the witnesses, more of the witnesses named in the Rule 26(f) report reside in Maryland than in any other state. (ECF No. 41). Only one witness was identified as residing in South Carolina. (ECF No. 41 at 8–9). Further, according to Discovery defendants, Hawke was the only witness residing in Texas at the time of disclosure.[5] (ECF No. 85 at 8–9). No party has argued that the cost of obtaining attendance of the other listed witnesses from North Carolina, California, Minnesota, and New York, in any district would be greater due to transfer or cause prejudice. Therefore, this factor weighs in favor of transfer to the District of Maryland.

The fourth factor weighs the availability of compulsory process. None of the parties contend that prejudice would result from not being able to compel a witness to testify at trial or by being required to present non-party witness testimony by deposition if the case is transferred. Accordingly, this factor is neutral.

Because the jury is unlikely to benefit from viewing a physical location, the fifth factor, the possibility of a view by the jury, does not weigh in favor of any venue in this case.

---

[5] Discovery defendants submitted, on information and belief, that Hawke currently resides in Florida. (ECF No. 85 at 8–9).

The sixth factor requires the court to determine whether the interest of having local controversies decided at home weighs in favor of transfer. As noted above, none of the parties are local or have material ties to South Carolina. This factor weighs in favor of transfer but is neutral between the District of Maryland, where both defendant businesses reside, or to the Western District of Texas, where Hawke resided during the bulk of the alleged defamation, (ECF No. 84 at 10).

Finally, the seventh factor requires the court to determine whether transfer is merited in the interest of justice.

> [The interest of justice category] is intended to encompass all those factors bearing on transfer that are unrelated to convenience of witnesses and parties. Such factors may include, for example, the pendency of a related action, the court's familiarity with the applicable law, docket conditions, access to premises that might have to be viewed, the possibility of unfair trial, the ability to join other parties and the possibility of harassment.

*Board of Trustees, Sheet Meral Workers Nat. Fund v. Baylor Heating & Air Conditioning, Inc.*, 702 F. Supp. 1253 (E.D. Va. 1988); *see Southwest Equip., Inc. v. Stoner & Co., Inc.,* C.A. No. 6:10-1765-HMH, 2010 WL 4484012, at *5 (D.S.C. Nov. 1, 2010) ("Analysis of the interest of justice factor requires a holistic approach, focusing on issues such as preserving judicial economy and conserving judicial resources."). Discovery defendants argue that in the interest of judicial economy, the court should rule on its pending motion for summary judgment[6] prior to deciding the issue of venue. (ECF No. 85 at 5–6). The court acknowledges that the parties would be required to bring the transferee court up to speed. However, the issues in this case are not highly technical and do not require specialized knowledge from a court. Therefore, any conservation of judicial resources that may result from the retaining of the action are minor.

---

[6] Discovery Defendant's filed their motion for summary judgment after the issuance of the court's show cause order regarding venue and only four days prior to the response to that order. (ECF No. 83).

For consideration of judicial economy, parties sometimes provide the court with statistics regarding docket congestion and average time for litigation of cases in the potential districts. *See, e.g., Southwest Equip., Inc. v. Stoner & Co., Inc.*, C.A. No. 6:10-1765-HMH, 2010 WL 4484012, at *5 (D.S.C. Nov. 1, 2010). In this case, neither party provided such an analysis of the congestion or expedience of the District of Maryland.[7] The court takes judicial notice of the Federal Court Management Statistics as they are displayed on the United States Courts website.[8] United States Courts, U.S. District Courts–Combined Civil and Criminal Federal Court Management Statistics, http://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2016/09/30-1. According to the judicial caseload report for the 12-month period ending September 30, 2016, the median time from filing of an action to disposition of the case is 8.3 months in the District of South Carolina; 6.3 months in the Western District of Texas; and 7.0 months in the District of Maryland. *Id*. The data shows that both the District of Maryland and the Western District of Texas have shorter median times for case disposition than the District of South Carolina. As for docket congestion, the median amount of pending cases per judgeship are 773 in the District of South Carolina; 549 in the Western District of Texas; and 489 in the District of Maryland. The foregoing data favors transfer of the case due to the high congestion of the South Carolina District Court docket and the shorter median disposition time in the alternative districts. The caseload and congestion data is neutral between the Western District of Texas and the District of Maryland.

[7] Hawke's response provided a comparison of court expedience between the District of South Carolina and the Western District of Texas. (ECF No. 84 at 10).

[8] The Fourth Circuit held that "a court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500 (4th Cir. 2015)); *O'Tolle v. Northrop Grumman Corp.*, 499 F.3d 1218, 1225 (10th Cir. 2007) ("It is not uncommon for courts to take judicial notice of factual information found on the world wide web."); *Jeandron v. Bd. of Regents of Univ. Sys. Of Maryland*, 510 F. App'x 223, 227 (4th Cir. 2013) (stating the court may take judicial notice of information on a web site, "so long as the web site's authenticity is not in dispute.").

Exercising its broad discretion, the court declines to decide Discovery defendants' motion for summary judgment (ECF No. 83) prior to ruling on the issue of venue. Considering the record as a whole in light of the factors discussed above, the present transfer of venue to the United States District Court for the District of Maryland is appropriate in the interest of justice and for the convenience of the parties and witnesses.

## CONCLUSION

After careful consideration, the court finds that a transfer of venue is warranted in this case. For the reasons stated above, Hawke's motion to transfer venue, in the alternative, to the District of Maryland is hereby **GRANTED**. (ECF No. 84). Hawke's motion to stay the case is **DENIED**. (ECF No. 86). Accordingly, it is hereby **ORDERED** that this case be transferred to the United States District Court for the District of Maryland.

**IT IS SO ORDERED.**

s/Timothy M. Cain
United States District Judge

February 23, 2017
Anderson, South Carolina