IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MYKEL HAWKE,

    Plaintiff,

v.   Civil Action No. PX 17-542

DISCOVERY COMMUNICATIONS, LLC, *et al.*,

    Defendants.

**MEMORANDUM OPINION**

Pending in this defamation action are motions for summary judgment, ECF No. 83, protective order and sanctions, ECF No. 82, and to stay pending a ruling on summary judgment, ECF No. 98, all filed by Defendants Discovery Communications, LLC d/b/a The Discovery Channel and Discovery Communications, Inc. (collectively, "Defendants"). Also pending are Plaintiff's motions to extend discovery, ECF No. 71, and to compel, ECF No. 72. The issues are fully briefed, and a hearing was held on July 6, 2017. *See* ECF No. 109. For the reasons stated below, Defendants' motion for summary judgment is granted, Defendants' motion sanctions is denied, Defendants' motions for a protective order and to stay are denied as moot, and Plaintiff's motions are denied.

I. BACKGROUND

A. Factual Background[1]

This case arises from the deterioration of a business relationship and friendship between Plaintiff Mykel Hawke ("Plaintiff") and Joseph Teti ("Teti"), both of whom were previously cast on Discovery Channel television shows.

Plaintiff and Teti are former business partners, friends, and military colleagues. *See* ECF No. 23-2 at 2. In 2010, Plaintiff and his wife became the co-stars of their own survival program on Discovery Channel called *Man, Woman, Wild*. *See* Hawke Dep., ECF 83-3 at 88. While on the show, Teti provided personal security for Plaintiff and his family. *See id.* at 286–88.

Shortly thereafter, Teti auditioned for *Dual Survival* on Discovery Channel. *See* Teti Aff., ECF No. 83-26 at 7. Teti was hired to star on *Dual Survival* as an independent contractor employed by Discovery Talent Services LLC ("Discovery Talent"), an entity that is not a named defendant in this lawsuit. *See* Teti Aff., ECF No. 83-26 at 1–2; Exh. A of Teti Aff., ECF No. 83-26 (Exhibit A within Teti's Talent Agreement § 4(a) states that Teti "acknowledges and agrees that [he] is an independent contractor and that [he] is not an employee" of Discovery Talent "for any purpose."); Nicolaou Aff., ECF No. 83-24 at 3. No evidence exists that Teti was ever employed by either of the named Discovery defendants. According to Teti's Talent Agreement for *Dual Survival*, Discovery Channel is the network for the television show *Dual Survival*, but the record makes no mention of what relationship, if any, exists between Discovery Talent and either of the Defendants. *See* Exh. A of Teti Aff., ECF No. 83-26.

While Teti was on the show, Defendants' social media team maintained an official Facebook[2] page for *Dual Survival*, but Teti was not expected or authorized to post from it. *See*

---

[1] The following facts are taken in the light most favorable to the non-moving party, Plaintiff Hawke.

Teti Aff., ECF No. 83-26 at 5; O'Shaughnessy Aff., ECF No. 83-25 at 2. Only members of Defendants' social media team had the administrative rights to issue official posts from and on behalf of the *Dual Survival* Facebook page. *See* Teti Aff., ECF No. 83-26 at 5; O'Shaughnessy Aff., ECF No. 83-25 at 2. Teti also had personal Facebook accounts, which Defendants did not administer or have affiliated posting rights. *See* Teti Aff., ECF No. 83-26 at 5; O'Shaughnessy Aff., ECF No. 83-25 at 2.

On July 13, 2014, Plaintiff emailed a group of Defendants' executives to complain about Teti. *See* Williams Aff., ECF No. 83-27 at 3. Plaintiff contended, without providing any examples, that Teti "recently used your network, television show, [and] social media page for personal defamation and threats." *See* Exh. A of Williams Aff., ECF No. 83-28 at 2. Plaintiff asked for an apology from Teti. *See id*. at 5. He also stated that he was copying his "legal team" and "in the absence of answer and/or some assistance from Discovery," he would seek "remedy" to protect his family, reputation, and career. *Id.* at 5. Because Plaintiff's email was so vague, Defendants' Senior Vice President of Talent Management asked Plaintiff to forward written evidence supporting his accusations. *Id.* at 2. Plaintiff refused, stating that he was "reluctant to provide [his] supporting documents at this time, in case they may be required in court." *Id*. Plaintiff also obliquely directed Defendants to review "what is readily available online," "examine [Teti's] conduct" and "observe the public's perception of his improprieties." *Id*. Unable to locate any threatening comments on the *Dual Survival* Facebook, Defendants nonetheless applied a filter to the page to block any posts containing the words "Mykel" or

---

[2] Facebook is an Internet-based social networking website that allows its users worldwide to share information, opinions, and other content of the users' own choosing for free. *See Klayman v. Zuckerberg*, 753 F.3d 1354, 1356 (D.C. Cir. 2014). Facebook allows users to create pages for businesses, as well as pages for groups relating to common associations or interests. *See Rembrandt Soc. Media, LP v. Facebook, Inc.*, 22 F. Supp. 3d 585, 590 (E.D. Va. 2013). Users can then post content on behalf of the business or using their individual Facebook profile within the business or association Facebook page.

"Hawke" out of an abundance of caution. *See* Williams Aff., ECF No. 83-27 at 3; O'Shaughnessy Aff., ECF No. 83-25 at 2.

Plaintiff now complains of three purportedly defamatory statements that Teti is said to have posted to the official *Dual Survival* Facebook page: (1) "three clinical psychologists have diagnosed Mykel Hawke as having Narcissistic Personality Disorder"; (2) "Mykel Hawke is mentally ill"; and (3) "Mykel Hawke is having his Special Forces Tab revoked by the Arm[y]." Amended Complaint, ECF No. 14 at 2. However, no evidence exists that these comments were posted to or from the official *Dual Surival* Facebook page or otherwise involved Defendants. The record contains only Facebook posts from Teti's personal Facebook page "Joseph Teti *Dual Survival*" (a Facebook page created by Teti without Defendants' approval) and another of Teti's personal Facebook pages. More particularly, the only evidence in the record are hard copy screen shots of these posts which contain no identifying information linking the posts to Defendants' *Dual Survival* Facebook. *See* ECF No. 83-26, Exhibit E; ECF No. 83-26, Exhibit F; ECF No. 83-26, Exhibit G; ECF No. 83-26, Exhibit I.

To be clear, the three specific alleged defamatory statements that Plaintiff claims are on the official *Dual Survival* Facebook page are the only actionable statements. *See* Amended Complaint, ECF No. 14 at 3. Although the Amended Complaint also vaguely references "other similar type statements," it never identifies for which additional statements Defendants must be held liable. *See* Amended Complaint, ECF No. 14 at 2. Accordingly, the Court will address whether the three alleged Facebook posts idenitifed in the Amended Complaint survive summary judgment. *See Cloaninger v. McDevitt*, 555 F.3d 324, 336 (4th Cir. 2009) ("[A] plaintiff may not raise new claims after discovery has begun without amending his complaint."); *Harris v. Reston Hosp. Center, LLC*, 523 F. App'x 938, 946 (4th Cir. Apr. 24, 2013) ("[C]onstructive amendment

of the complaint at summary judgment undermines the complaint's purpose and can thus unfairly prejudice the defendant") (citations omitted); Fed. R. Civ. P. 8(a) (a pleading must set forth facts stating a claim).

### B. Procedural History

Plaintiff initially filed his complaint against Defendants and Teti in South Carolina state court, alleging negligent hiring, training, and supervision, slander, libel, and violation of S.C. Unfair Trade Practices Act ("UTPA"). *See* ECF No. 1-1 at 2. Defendants then removed the case to the United States District for the District of South Carolina. *See* ECF No. 1. Plaintiff thereafter amended his complaint, alleging in Count I negligent hiring, training, and supervision arising from Defendants purported failure to properly vet or train employees such as Teti regarding "public interaction, [and] when and what types of communications employees should say publically and/or put into print." Amended Complaint, ECF No. 14 at 3-4. Counts II, III, IV for defamation, slander, and libel or libel per se arise solely from the alleged three statements posted by Teti on Facebook. *See* Amended Complaint, ECF No. 14 at 4–6. Count V, the UTPA claim, alleges that Defendants engaged in "unfair and deceptive actions" by allowing the postings and through communicating with producers of other shows. Amended Complaint, ECF No. 14 at 6-7. Count VI alleges that Defendants intentionally interfered with Plaintiff's business relationships "by defaming the Plaintiff to those business associates and partners, without justification." Amended Complaint, ECF No. 14 at 8.

Teti subsequently moved to dismiss the action against him for lack of personal jurisdiction, ECF No. 23, which was granted on November 6, 2015. *See* ECF No. 37. For the remaining parties, the third and final consented amendment to the scheduling order required

discovery to be complete by January 23, 2017, and all dispositive motions to be filed by February 6, 2017. *See* ECF No. 69.

Two weeks prior to the January 23, 2017 close of discovery, Plaintiff filed motions to compel the production of documents related to Teti's employment file, and to extend discovery. *See* ECF Nos. 71, 72. On February 6, 2017, Defendants moved for protective order to exclude from this Court's consideration at summary judgment any documents that Plaintiff produced at the close of discovery and related sanctions. *See* ECF No. 82-1 at 1-2. Based on the requested relief, the Court will construe this motion as one to strike these materials to the extent they are used in Plaintiff's opposition.

Defendants also filed their motion for summary judgment on February 6, 2017 and Plaintiff responded. The District Court in South Carolina transferred the case to this Court on Febraury 23, 2017. ECF No. 91 at 11. Defendants then filed a motion to stay the proceedings in light of filing their dispositive motion. ECF No. 98.

## II.     STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing predecessor to current Rule 56(a)). The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If sufficient evidence exists for a reasonable jury to render a verdict in favor of the party opposing the motion, then a genuine dispute of material fact is presented and summary judgment should be denied. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, the "mere existence of a scintilla of evidence in support of the [opposing party's] position" is insufficient to

defeat a motion for summary judgment. *Id.* at 252. The facts themselves, and the inferences to be drawn from them, must be viewed in the light most favorable to the opposing party, *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008), who may not rest upon the mere allegations or denials of his pleading but instead must, by affidavit or other evidentiary showing, set out specific facts showing a genuine dispute for trial, Fed. R. Civ. P. 56(c)(1).

## III. ANALYSIS

### A. Plaintiff's Motion for Further Discovery

Plaintiff moves to extend the discovery period for a fourth time under Federal Rule of Civil Procedure 16(b). *See* ECF No. 71, and for additional discovery pursuant to Rule 56(f), contending that determining summary judgment without further discovery is "premature." *See id.*; Pl.'s Opp'n to Summ. J., ECF No. 89 at 3. Defendants object, noting that Plaintiff has failed to provide the requisite Rule 56(f) affidavit setting forth the outstanding discovery it needs. More aptly, Defendants object to any further continuances of the discovery period in light Plaintiff's lack of due diligence. *See* ECF No. 76 at 2–3. The Court agrees with Defendants.

Pursuant to Rule 16(b)(4), the Court may modify a scheduling order "for good cause." Fed. R. Civ. P. 16(b)(4). "Properly construed, 'good cause' means that scheduling deadlines cannot be met despite a party's diligent efforts." *Dilmar Oil Company, Inc. v. Federated Mutual Insurance Company*, 986 F.Supp. 959, 980 (D.S.C. 1997), *aff'd by unpublished opinion*, 129 F.3d 116 (4th Cir. 1997). Carelessness is not compatible with a finding of diligence and offers no reason to grant the requested relief. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992). Indeed, "a court's scheduling order is not a frivolous piece of paper, idly entered,

7

which can be cavalierly disregarded by counsel without peril." *Rassoull v. Maximus, Inc.*, 209 F.R.D. 372, 374 (D. Md. 2002).

In the context of summary judgment, where the nonmoving party contends more discovery is necessary, Rule 56(f) requires that the party seeking to invoke its protection must state with specificity through an affidavit how additional evidence will rebut the summary judgment motion. *Evans v. Tech. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Where the nonmoving party's objections before the district court "serve[] as the functional equivalent of an affidavit," and if the nonmoving party was not lax in pursuing discovery, then the Court may consider whether summary judgment is premature, even though the nonmovant did not record its concerns in the form of a Rule 56(f) affidavit. *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *First Chicago Int'l v. United Exch. Co.*, 836 F.2d 1375, 1380 (D.C. Cir. 1988)).

First with regard to extending discovery as a general proposition, Plaintiff's lackadaisical approach to this case will not now be rewarded by extending deadlines once again. To the extent Plaintiff seeks effectively to undo Judge Cain's ruling and depose the witnesses for which notices were untimely provided, this Court declines to do so.[3] Even though discovery had been extended three times before, Plaintiff failed to notice a single deposition until fifteen months after this case had begun and just days before the close of discovery. *See* ECF No. 73-1; Protective Order, ECF No. 75 (vacating deposition notices). Plaintiff utterly fails to justify his

---

[3] During the discovery period and before the action was transferred to this Court, Judge Timothy M. Cain of the District of South Carolina vacated seven deposition notices because Plaintiff failed to provide reasonable written notice to Defendants. *See* ECF No. 75.

delay in pursuing the discovery he now seeks.[4] For several of the depositions, Plaintiff knew over a year ago of the witnesses which he sought to depose, as evidenced by the Rule 26(f) disclosure—witnesses that remained unchanged even when Plaintiff noticed depositions in the final weeks of the discovery period. *Compare* ECF No. 41-1 (initial 26(f) report listing witnesses) with ECF No. 73-1 (depositions at issue in Plaintiff's motion for an extension of discovery) and ECF No. 75 (J. Cain's order vacting Plaintiff's deposition subpoenas). Plaintiff's own lack of diligence and foresight, not a lack of opportunity, is to blame for his dearth of affirmative evidence.

With respect Plaintiff's Rule 56(f) request, Plaintiff contends that he needs to explore more fully the scope of Teti's duties related to internet postings and his business relationship with Defendants, all of which were at the heart of Plaintiff's claims from the beginning. Plaintiff could have certainly obtained all of this discovery well within the 15-month discovery period. *See Ingle v. Yelton*, 264 F. App'x 336, 339 (4th Cir. 2008) ("[A] district court acts wholly within its discretion in denying additional discovery where the delay in discovery is due to the fault of the complaining party.") (quoting *Strag v. Board of Trustees, Craven Cmty. Coll.*, 55 F.3d 943, 953 (4th Cir. 1995)). Consequently, the Court declines to give Plaintiff additional time—after discovery has been extended three prior times and has long since concluded—to do the work he should have done several months ago.

Moreover, nothing about Defendants' summary judgment motion is "premature" as Plaintiff so blithely asserts. *See* Pl.'s Opp'n to Summ. J., ECF No. 89 at 3. Defendants filed their motion on the due date set by Judge Cain and after the close of discovery. Accordingly, Plaintiff has provided no basis to allow any further discovery under Rule 56(f).

---

[4] Plaintiff contested at motions hearing that an incident report from Maxim Holland, ECF No. 88, Exhibit 4, demonstrated a need for further discovery. However, this document is unrelated to Plaintiff's claims in the Amended Complaint and does not amount to the good cause necessary to extend discovery.

### B. Plaintiff's Motion to Compel

Plaintiff also moves to compel the production of documents related to Teti's personnel file. *See* ECF No. 72 at 1–2. In open court, Defendants, through counsel, represented that all of the documents in Defendants' possession, custody or control related to Teti had been disclosed or were noted as privileged in the disclosed privilege log. *See also* Defendants'Opposition to Motion to Compel, ECF No. 78 at 3. Accordingly, the motion is denied.

### C. Defendants' Motion for Summary Judgment[5]

Defendants first argue that summary judgment is warranted because Plaintiff has generated no evidence that Defendants were publishers of the purportedly defamatory statements. ECF No. 83 at 11. Second, Defendants contend that liability cannot survive under a respondeat superior theory because no evidence exists that Teti is an employee or agent of Defendants. *Id.* at 17. Finally, Defendants argue that Plaintiff's slander claim fails because Plaintiff has not identified any spoken defamatory statement. *Id.*[6]

#### 1. Count III: Slander

The Court begins with Plaintiff's slander claim because it is most easily resolved. Defamation as a cause of action allows recovery for an injury arising from articulated falsehoods. *Holtzscheiter v. Thomson Newspapers, Inc.*, 332 S.C. 502, 508 (1998). Slander is

---

[5] The parties agree that South Carolina law governs, and so this Court will apply South Carolina law in considering the motion for summary judgment. *See Flying J Inc. v. Comdata Network, Inc.*, 405 F.3d 821, 831 n.4 (10th Cir. 2005); *In re Korean Air Lines Disaster*, 932 F.2d 1475, 1495 (D.C.Cir. 1991) ("Unlike jurisdictional issues, courts need not address choice of law issues *sua sponte*.") (cited favorably in *GBJ Corp. v. E. Ohio Paving Co.*, 139 F.3d 1080, 1085 (6th Cir. 1998) (declining to undertake choice of law inquiry where the parties agreed in applying New York law)).

[6] Alternatively, Defendants contend that § 230 of the Communications Decency Act ("CDA") immunizes claims based on defamatory internet statements of a third-party and Teti's Facebook postings about Hawke were outside the scope of Teti's employment with Discovery Talent. Defendants also contend that the purported statements are not defamatory. *See* ECF No. 83. Defendants agreed at the hearing, however, that if summary judgment is granted because no evidence connects Defendants to the purported defamatory statements, the Court need not address Defendants' alternate arguments.

defamation using spoken word, where libel is defamation by writing or conduct. *See Wilhoit v. WCSC, Inc.*, 293 S.C. 34 (Ct. App. 1987) (television broadcast of photo is libel). The purported statements here are written and are thus in the form of libel, not slander. Plaintiff has alleged slander in Count III but produced no evidence of slander. Defendants' motion for summary judgment is therefore granted as to Count III.

### 2. Counts II, IV, V, VI: Defamation, Libel, Violation of South Carolina's Unfair Trade Practices Act, and Intentional Interference with Contractual Relationship

Plaintiff's claims of defamation, libel, violation of South Carolina's Unfair Trade Practices Act, and intentional interference with contractual relationship center on Teti's offending posts on Facebook. The claims cannot survive summary judgment because no evidence demonstrates Defendants were involved in the publishing of these posts. Specifically, Plaintiff does not claim that Defendants directly authored the offending posts. Plaintiffs also have not put forward any evidence, however, that Teti posted these statements to or from the official *Dual Survival* Facebook page or any other page controlled by Defendants. When the Court asked Plaintiff at the hearing to identify specifically any evidence linking Defendants to the offending posts, Plaintiff only pointed to screen captures that contain no evidence that they were posted to or from the official *Dual Survival* Facebook page or any other Facebook page controlled by Defendants. ECF No. 84-3 at 3.

Plaintiff's naked assertions that these posts involve the official *Dual Survival* page is belied by his consistent refusal to corroborate his claims. *See e.g.*, Exh. A of Williams Aff., ECF No. 83-28 at 2. Plaintiff's mere pronouncements are simply not enough to demonstrate that Defendants had any involvement in posting or hosting the offending comments on any Facebook page that they controlled. *See Brailsford v. Wateree Cmty. Action, Inc.*, 135 F. Supp. 3d 433, 448

(D.S.C. 2015) (dismissing defamation claims at summary judgement because "[p]laintiff has not directed the court to any evidence to support an argument that the newly identified instances of alleged defamation were published . . .") (citing *Williams v. Lancaster Sch. Dist.*, 369 S.C. 293, 631 S.E.2d 286, 292 (2006) (holding that at summary judgment, a plaintiff's inability to identify competent evidence in the record showing an alleged defamatory statement and that the alleged statement was published to a third party is fatal)); *cf. Nat'l Enterprises, Inc. v. Barnes*, 201 F.3d 331, 335 (4th Cir. 2000) (self-serving affidavit describing, without producing, evidence of the agreement in question insufficient to defeat summary judgment). Accordingly, when viewing the record evidence in the light most favorable to Plaintiff, the offending posts do not involve Defendants at all. Thus, summary judgment is warranted on this ground.

Plaintiff counters that Defendants are responsible for Teti's posts under a respondeat superior theory. Specifically, Plaintiff contends that because Teti is an agent of Defendants, his posts published from Teti's own Facebook page may properly be considered as those of Defendants. To be sure, a principal may be held liable for defamatory statements made by an agent where the agent is acting within the scope of his employment or within the scope of his apparent authority. *Fredrich v. Dolgencorp, LLC*, No. 3:13-CV-01072-JFA, 2014 WL 4417407, at *6 (D.S.C. Sept. 8, 2014) (applying South Carolina law and citing *Murray v. Holnam, Inc.*, 344 S.C. 129, 139 (Ct. App. 2001)). However, the Court must first determine which entity is the principal on whose behalf the agent acts.

Construing the evidence most favorably to Plaintiff, the record provides no connection between the entity who contracted for Teti's services on *Dual Survival*—Discovery Talent LLC—and Defendants. It is undisputed that Teti's employment on *Dual Survival* was secured by Discovery Talent. *See* Exh. A of Teti Aff., ECF No. 83-26 (Teti's Talent Agreement). Teti's

12

agreement with Discovery Talent, moreover, makes clear that Discovery Talent exercises control over Teti's employment generally and more specifically with regard to the limits of his permitted Facebook posting activities. *Id.* The Agreement specifically identifies Discovery Talent as the "Company," and then expressly states that Teti as the "Artist" "shall not . . . make any other statements about Artist's services, the Program, Company, its affiliates, agents and/or employees, or any other party involved in the Program (e.g. the Program's sponsors) in any media (including without limitation any online or print communications or Twitter or *Facebook* postings) without *Company's* prior written consent." *Id.* (emphasis added). Accordingly, the only entity which arguably controlled Teti's Facebook activities is Discovery Talent, the party not sued in this action.

By contrast, Plaintiff has offered no evidence that Teti was employed by, or under the direction or control of Defendants. Teti attested under oath that, "[a]t no time . . . was I an employee of either of the defendants in this lawsuit . . . . Nor have I ever been employed by any Discovery entity." Teti Aff., ECF No. 83-26 at 2. Nor has Plaintiff produced any evidence establishing what relationship, if any, exists between Discovery Talent and Defendants so that the chain of agency can extend to Defendants through Discovery Talent. Accordingly, even if the Court presumes for the sake of argument that the purportedly offensive posts were within the scope of Teti's employment, the only evidence is that Teti acted as the agent of Discovery Talent and not Defendants. Defendants' motion for summary judgment is therefore granted as to Counts II, IV, V, VI.

### 3. Count I: Negligent Hiring and Supervision[7]

For the same reasons, Plaintiff's claims of negligent hiring and supervision must fail. A claim of negligent hiring and supervision presupposes an employer-employee or agency-agent relationship. *See generally Callum v. CVS Health Corp.*, 137 F. Supp. 3d 817, 861 (D.S.C. 2015) ("because Plaintiff has not alleged facts creating a plausible inference that the . . . Defendants qualify as employers, these defendants cannot be held liable for negligent supervision or retention") (citing *Degenhart v. Knights of Columbus*, 309 S.C. 114, 115 (1992) (specifying "[a]n *employer* may be liable for negligent supervision" (emphasis in *Callum*))); *Doe v. ATC, Inc.*, 367 S.C. 199, 206 (Ct. App. 2005) (Negligent hiring cases "turn on two fundamental elements—knowledge of the employer and foreseeability of harm to third parties."). Because there is no evidence of such a relationship between Teti and Defendants, summary judgment is granted as to Plaintiff's negligent hiring and supervision claims.

### 4. Count V: Violation of South Carolina's Unfair Trade Practices Act

A final word on Plaintiff's UTPA claim. Plaintiff's Amended Complaint arguably may be construed to include misconduct beyond the alleged defamatory postings. *See* Amended Complaint, ECF No. 14 at 6–7; ECF No. 41-1 at 3. Specifically, Hawke claims that "the Discovery Defendants also contacted ABC Television/Lincoln Square Productions and potentially other business associates, which the Plaintiff had contracts or prospective contracts with." *Id.* However, Plaintiff has not put forward any evidence in support of this claim. *See Uhlig LLC v. Shirley*, No. 6:08-CV-01208-JMC, 2011 WL 1119548, at *9 (D.S.C. Mar. 25,

---

[7] Plaintiff's "negligent training," claim is simply a specific negligent supervision theory and is addressed accordingly. *Holcombe v. Helena Chem. Co.*, No. 2:15-CV-2852-PMD, 2017 WL 713921, at *5 (D.S.C. Feb. 23, 2017) (citing *Gainey v. Kingston Plantation*, No. 4:06-3373-RBH, 2008 WL 706916, at *7 n.4 (D.S.C. Mar. 14, 2008) ("It does not appear that South Carolina recognizes a claim for negligent training separate and apart from one for negligent supervision.")).

2011) (dismissing UTPA claim where plaintiff offered no evidence that the conduct was intentionl, fair or deceptive conduct, potentially misled the public, or potential for repetition). Plaintiff makes no argument to the contrary. *See Nat'l Mortg. Warehouse, LLC v. Bankers First Mortg. Co.*, 208 F. Supp. 2d 565, 566 (D. Md. 2002) (granting motion for summary judgment because it was unopposed). Accordingly, Defendants' motion for summary judgment is grantedas to Count V.

### D. Defendants' Motion for a Protective Order and Sanctions

Finally, the Court turns to Defendants' motion for a protective order in which it seeks to prohibit Plaintiff from relying on documents produced to Defendants after discovery had closed. Based on the same late production, Defendants seek Rule 37 sanctions. *See* Discovery's Reply, ECF No. 96 at 3. Because neither party relies on any of the offending documents, Defendants' request for protective order is denied as moot.

Defendants' motion for sanctions is also denied. Defendants argue that sanctions are warranted based on two document subpoenas to third-parties that Plaintiff issued on January 23, 2017, with deadlines to respond by February 14 and 15, 2017, respectively. *See* Fenno Aff., ECF No. 82-2 at 2; Subpoenas, ECF Nos. 82-3, 82-4. Although the subpoenas were dated on the last day of the discovery period, the record does not reflect when the subpoenas were served. Plaintiff also had requested on January 9, 2017, to extend the discovery period, ECF No. 71, and even though the Court denies extending the discovery period, Plaintiff's request nonetheless demonstrates Plaintiff's attempt to complete discovery in a timely fashion. Sanctions on this record, therefore, are not warranted.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgement shall be granted. Defendants' motions for a protective order and to stay the case shall be denied as moot. Defendants' motion for sanctions shall be denied. Plaintiff's motions to compel and to extend discovery shall be denied. A separate order will follow.

| | |
|---|---|
| 7/12/2017 | /S/ |
| Date | Paula Xinis<br>United States District Judge |